## STATE OF CONNECTICUT *v.* PEG E. ROTH
### (AC 27517)

DiPentima, McLachlan and Lavine, Js.

Argued September 7—officially released October 23, 2007

*James D. Diamond*, for the appellant (defendant).

*Robin S. Schwartz*, assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, former state's attorney, and *Stephen J. Sedensky III*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Peg E. Roth, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes (Rev. to 2005) § 14-227a (a) (1), operating a motor vehicle while her license was suspended in violation of General Statutes § 14-215 (a) and interfering with an officer in violation of General Statutes § 53a-167a (a).[1] The defendant's primary claim on appeal is that there was insufficient evidence by which the jury reasonably could have found that she operated a motor vehicle on a public highway while under the influence of intoxicating liquor. She also claims that the trial court improperly (1) denied her motion for a judgment of acquittal and (2) instructed the jury. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. During the late afternoon and early evening of February 1, 2005, the defendant patronized the Lakeside

---

[1] The defendant pleaded guilty to the charge in a part B information of having previously been convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a) and (g).

Cafe on Hayestown Road in Danbury and Widow Brown's Cafe and Chris's American Restaurant, located on Federal Road in Danbury and Brookfield, respectively. When she was arrested, the defendant had in her possession two credit card receipts that she had signed that day. A receipt from Widow Brown's Cafe, a bar and restaurant, for $34.25 plus a $12 tip was signed at 4:05 p.m.

Later, the defendant was seen with a group of people at the bar at Chris's American Restaurant. At about 7:14 p.m., Caroline Martin, manager of Chris's American Restaurant, asked the defendant to leave the premises because she was being loud and vulgar and was annoying other patrons. Martin testified that the defendant did not appear to be intoxicated when she left but acknowledged that the business has a policy of asking individuals who appear to be under the influence of intoxicating liquor to leave. Before she left alone, the defendant signed charges to a credit card totaling $161.18, including a $30 tip. The defendant paid for drinks for members of the group and $28.75 for herself.[2]

At approximately 7:30 p.m. on the evening in question, Abner Figueroa saw the glare of the defendant's headlights coming toward his house on Orchard Drive, a dead-end street off Hayestown and Great Plain Roads in Pleasant Acres, a private lakefront community in Danbury. Near the end of Orchard Drive, adjacent to Figueroa's house, Figueroa saw the defendant's vehicle stop and remain in the middle of the street with the lights on. He saw a person in the driver's side when he made a point of taking out his garbage. Figueroa observed the vehicle periodically for approximately one

---

[2] Martin testified that no food was ordered, and later at the police station, the defendant told Officer David Cooney of the Danbury police department that she had had nothing to eat that day.

hour and fifteen minutes. At 8:47 p.m., Figueroa telephoned the Danbury police department to report the vehicle's presence.

Officer David Cooney of the Danbury police department responded to the complaint at about 9 p.m. He saw the defendant's vehicle parked in the middle of Orchard Drive obstructing traffic traveling in both directions. He observed that the taillights were illuminated, the radio was on and the motor was running.[3] Although the temperature was near twenty-five degrees, the windows on the operator's side of the vehicle were open. Cooney approached the vehicle and saw the defendant asleep in the operator's seat, slumped in the direction of the passenger's side with her feet on the dashboard. The defendant was disheveled in appearance and shoeless. Cooney was able to awaken the defendant only after shouting at her and banging on the side of the vehicle for some time. When the defendant awoke, she was disoriented, minimally verbal and smelled of alcohol. Her eyes were bloodshot.

---

[3] "Operation occurs when a person in the vehicle intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle. . . . This court has clarified the meaning of operation by holding that an intent to drive is not an element of operation. . . . An accused operates a motor vehicle within the meaning of . . . § 14-227a (a) when, while under the influence of alcohol or any drug and while in the vehicle and in a position to control its movements, he manipulates, for any purpose, the machinery of the motor or any other machinery manipulable from the driver's position that affects or could affect the vehicle's movement, whether the accused moves the vehicle or not." (Citations omitted; internal quotation marks omitted.) *State* v. *Wiggs*, 60 Conn. App. 551, 554, 760 A.2d 148 (2000).

In *State* v. *Haight*, 279 Conn. 546, 555, 903 A.2d 217 (2006), our Supreme Court stated: "We previously have recognized Connecticut's unambiguous policy . . . [of] ensuring that our highways are safe from the carnage associated with drunken drivers. . . . In light of this policy and the fact that the insertion of a key into the ignition is an act . . . which alone or in sequence will set in motion the motive power of the vehicle . . . we conclude that the defendant's act of inserting the key into the ignition constituted operation of a motor vehicle within the meaning of § 14-227a (a)." (Citations omitted; internal quotation marks omitted.)

Cooney asked the defendant for her operator's license and vehicle registration. The defendant responded by demanding to see Cooney's license. She refused or was unable to identify herself or whose vehicle she was operating. She also did not know where she was or where she was going. When Cooney asked the defendant to turn off the vehicle's motor, she turned on and off her high beam lights and windshield wipers. Concerned about the defendant's safety, Cooney reached into the vehicle, turned the motor off and took the keys from the ignition. He then opened the door and told the defendant to step outside so that he could perform the standard field sobriety tests. The defendant refused to obey Cooney, despite his multiple requests that she get out of her vehicle. The defendant braced herself against the steering wheel and kicked her bare feet at Cooney, striking him in the thigh and gun belt area. Cooney then grabbed the defendant by the left arm and pulled her from the vehicle, while she continued to kick and scream at him. When the defendant was out of her vehicle, she lifted her right arm as if to strike Cooney. Cooney then restrained the defendant in handcuffs and arrested her. He was unable to administer the field sobriety test due to the defendant's combative and aggressive behavior. Cooney took the defendant to the police station where she refused to submit to a Breathalyzer test. Although she asked for her cellular telephone to make a call, when it was given to her, the defendant did not know how to operate it. At the time of this incident, the defendant's motor vehicle operator's license was under suspension.

The defendant's case was tried to the jury in January, 2006. After the jury found her guilty of the three counts charged in the information, the defendant pleaded guilty to having been convicted of operating a motor vehicle while under the influence of intoxicating liquor in Waterbury, Vermont, in April, 2000, and in Southeast,

New York, in September, 1997. The court then ordered a presentence investigation report and a postconviction Connecticut alcohol and drug abuse commission evaluation. The court sentenced the defendant on March 7, 2006,[4] and this appeal followed.

I

The defendant claims that there was insufficient evidence from which the jury reasonably could have found that she operated her vehicle on a public highway while she was under the influence of intoxicating liquor in violation of § 14-227a (a) (1) and that the court improperly denied her motion for a judgment of acquittal on that basis. We disagree with both of these claims and will address them jointly as they concern the same factual and legal bases.

The following additional facts are relevant to our resolution of the defendant's claims. In an amended long form information dated January 20, 2006, the senior assistant state's attorney for the judicial district of Danbury charged in count one that the defendant operated "a motor vehicle while under the influence of alcohol . . . and . . . that at the Town of Danbury, on or about the [first] day of February, 2005, in the evening hours, in the area of [three] Orchard [Drive], Hayestown [Road] and Great Plain [Road], the [defendant] operated a motor vehicle on a public highway of this state while under the influence of intoxicating liquor, in violation

---

[4] The defendant received an effective sentence of three years in prison, suspended after two years, and three years of probation. In addition, the court ordered the defendant to pay a fine of $2000 plus fees and costs. The court also ordered special conditions of probation: the defendant shall not operate a motor vehicle (the court permanently revoked her operator's license), not use alcohol or illegal drugs, get substance abuse treatment in an inpatient or outpatient facility as deemed appropriate by the office of adult probation, perform 100 hours of community service within the first year, attend a Mothers Against Drunk Driving impact panel and not work in an establishment where alcohol is served for the first year of probation.

of § 14-227a (a) (1) of the Connecticut General Statutes."[5] The state's theory of the case was that the defendant operated her vehicle on Hayestown and Great Plain Roads, public highways, in order to get to Orchard Drive. The state presented evidence from Figueroa that Orchard Drive connects to Hayestown and Great Plain Roads. Cooney testified that Hayestown, Federal and Great Plain are public highways.[6] The theory of defense was that the defendant was seen operating her vehicle on Orchard Drive only. The defense presented evidence that Orchard Drive is not a public highway. During trial, the defendant filed a motion seeking to compel the state to amend the information to conform to the evidence, specifically, to allege that the defendant drove while under the influence of intoxicating liquor on a private road on which a speed limit had been posted in violation of § 14-227a (a) (1). At the time, the defendant conceded that Hayestown and Great Plain Roads are public highways. The court denied the defendant's motion.

At the conclusion of the state's evidence, the defendant filed a motion for a judgment of acquittal. The court denied the motion. We review the defendant's insufficiency of the evidence claim by examining all of the evidence before the jury. It is the propriety of the jury's verdict of guilty, not the propriety of the court's denial of a judgment of acquittal after the state's case-in-chief has been concluded, that we review. In this case, we therefore consider all of the evidence, regardless of whether it was introduced by the state or the

---

[5] General Statutes (Rev. to 2005) § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor . . . . A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor . . . if such person operates a motor vehicle *on a public highway of this state* . . . or on any private road on which a speed limit has been established . . . (1) while under the influence of intoxicating liquor . . . ." (Emphasis added.)

[6] A number of maps of the area were put into evidence to show the relationship of the highways and roads.

defendant. See *State* v. *Khadijah*, 98 Conn. App. 409, 413–14, 909 A.2d 65 (2006), cert. granted on other grounds, 281 Conn. 901, 916 A.2d 46 (2007).

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . [I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citation omitted; internal quotation marks omitted.) *State* v. *Solomon*, 103 Conn. App. 530, 539, 930 A.2d 716 (2007).

Moreover, our Supreme Court has stated: "[I]t does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require

acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 402–403, 902 A.2d 1044 (2006).

Furthermore, we are mindful that the jury is the arbiter of credibility. *State* v. *Russell*, 101 Conn. App. 298, 316, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007). With respect to a challenge to the sufficiency of the evidence, we note that "[i]n considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *State* v. *Fauntleroy*, 101 Conn. App. 144, 153, 921 A.2d 622 (2007).

We conclude, on the basis of our review of all of the evidence and the reasonable inferences to be drawn therefrom, that the jury reasonably could have found beyond a reasonable doubt that the defendant consumed numerous alcoholic beverages on February 1, 2005, and was under the influence of intoxicating liquor when she left Chris's American Restaurant and while she operated her motor vehicle on Federal Road and other public highways, including Great Plain Road or Hayestown Road, in Brookfield and Danbury to reach Orchard Drive. The evidence presented by the state, we conclude, was sufficient to support the defendant's conviction of operating a motor vehicle on a public

highway while under the influence of intoxicating liquor in violation of § 14-227a (a) (1).

## II

The defendant's second claim is that the court improperly instructed the jury as to what constitutes a public highway for purposes of conviction pursuant to § 14-227a (a) (1). The state argues that we should not review this claim because the defendant failed to preserve it at trial. We agree with the state.

"A party may preserve for appeal a claim that a jury instruction was improper either by submitting a written request to charge or by taking an exception to the charge as given. Practice Book § 16-20. If counsel follows the latter course, he or she must state distinctly the matter objected to and the ground of the objection. . . . The purpose of the rule is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." (Citation omitted; internal quotation marks omitted.) *State* v. *Pereira*, 72 Conn. App. 107, 112–13, 806 A.2d 51 (2002), cert. denied, 262 Conn. 931, 815 A.2d 135 (2003).

Here, the defendant submitted a request to charge consistent with her theory of the case that the state failed to prove that Orchard Drive was a private road with a posted speed limit. Her request to charge stated: "The defendant requests the Court to charge as a necessary element for alleged violation of [§] 14-227a that the State must prove that she was operating a motor vehicle 'on a *private road* with a posted speed limit.'" (Emphasis added.) The court did not include the requested language in its charge. The defendant took no exception to the charge given by the court and did not preserve the specific claim raised on appeal relating to the definition of a public highway under § 14-227a

(a) (1) by her request to charge on the separate issue of operation on a private road.

Furthermore, as noted in part I, the contested issue at trial was whether Orchard Drive is a public highway or private road. The defendant conceded that Federal, Hayestown and Great Plain Roads are public highways. We need not decide, however, whether Orchard Drive is a public highway in concluding that there was sufficient evidence by which the jury reasonably could infer that the defendant operated a motor vehicle on a public highway while under the influence of intoxicating liquor.[7]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] We note that interrogatories were not submitted to the jury. We do not know which road the jury identified as the public road over which the defendant operated her motor vehicle while she was under the influence of intoxicating liquor. The general verdict rule thus applies. See *State* v. *Sanko*, 62 Conn. App. 34, 40, 771 A.2d 149 ("[a] factual insufficiency regarding one statutory basis, which is accompanied by a general verdict of guilty that also covers another, factually supported basis, is not a federal due process violation" [internal quotation marks omitted]), cert. denied, 256 Conn. 905, 772 A.2d 599 (2001), quoting *State* v. *Chapman*, 229 Conn. 529, 539, 643 A.2d 1213 (1944); see also *Griffin* v. *United States*, 502 U.S. 46, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991).