PRESENT:  All the Justices

MATTHEW ALEXANDER KIM

                                               OPINION BY

v.  Record No. 160665                    JUSTICE CLEO E. POWELL
                                             April 13, 2017

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jan L. Brodie, Judge

Matthew Alexander Kim ("Kim") appeals the trial court's judgment that he unreasonably refused to submit a breath sample in violation of Code § 18.2-268.3 because, according to Kim, he was on a private road that did not fall within the definition of a "highway" provided by Code § 46.2-100 at the time he was arrested and, therefore, he was not required to submit a breath sample.

## I.  BACKGROUND

The Avant Apartment complex is a private apartment complex located in Fairfax County. The complex is accessible by public roads, but the roads within the complex are privately maintained.  There are parking spaces perpendicular to several of the roads within the complex. There are no physical barricades or security guards preventing entry by the public, but there are signs located at every entrance and throughout the complex indicating that Avant Apartment complex is "Private Property."  The signs also explicitly state "No Soliciting," "No Loitering," "No Trespassing" and "Violators Will Be Prosecuted."

On March 11, 2015, at approximately 4:30 a.m., Officer Richard Cash ("Officer Cash") of the Fairfax County Police Department was approached by a tow truck driver who patrols the Avant Apartment complex.  At the tow truck driver's request, Officer Cash went to investigate a

vehicle parked at 4702 Nathan Hale Drive within the Avant Apartment complex.[1] Upon arrival, Office Cash observed a vehicle parked "somewhat diagonally" in one of the parking spaces. The left rear wheel of the vehicle was on the grassy median next to the parking space. Officer Cash noted that the vehicle's lights, engine and radio were on and an individual, later determined to be Kim, was asleep in the front seat.

Kim eventually awoke and Officer Cash observed that Kim appeared confused, lethargic and disoriented. When Kim got out of the vehicle, he was unsteady on his feet and lost his balance. Kim was asked to perform field sobriety tests and he agreed to do so. However, despite having spoken English for the previous five minutes, when Officer Cash attempted to administer the tests, Kim stated that he did not speak English. Kim then refused to undertake any further field sobriety tests, including a preliminary breath test. Kim was arrested on suspicion of drunk driving and taken to the police station for the administration of a breath test.

At the police station, Kim was asked, through an interpreter, if he was willing to take a breath test. When Kim did not give an affirmative answer, Officer Cash advised Kim of the consequences of his refusal, as required under Code § 18.2-268.3(B). Kim then began cursing at Officer Cash in English and stated that "this is just a stupid DUI . . . I will be out in the morning." Officer Cash subsequently charged Kim with unreasonable refusal to submit a breath sample under Code § 18.2-268.3.

At Kim's trial on the unreasonable refusal charge, the Commonwealth's evidence was limited to Officer Cash's testimony and related exhibits. On cross-examination, Officer Cash

---

[1] At trial, Officer Cash testified that Nathan Hale Drive "is located in the dead center of the Avant apartment complex." He further explained that Nathan Hale Drive intersects with Patriot Drive, a public highway, at one end; "[a]t the other end Nathan Hale Drive is connected to Commons Drive, which is a private road in the apartment complex." Additionally, two other private roads intersect with Nathan Hale Drive: Ethan Allen Drive and Charles Thompson Lane.

was asked to identify the sign in Commonwealth Exhibit 7.[2] Officer Cash identified the "No Trespassing" sign and "related that the sign was of the type found throughout the complex." He further testified that signs identical to the "the private property, no trespass and no loitering sign were located at all entry points into the [apartment] complex and at several points throughout the complex road network . . . including the intersections of Nathan Hale Drive with Commons and Patriot Drives, and Ethan Allen Lane, which comprised all the access points to the private Nathan Hale Drive."

After the Commonwealth rested, Kim moved to strike the Commonwealth's evidence, arguing that the Commonwealth failed to prove that he was operating a motor vehicle on a "highway" as defined by Code § 46.2-100. Kim relied on the fact that the apartment complex's roadways were privately maintained and, in light of the "No Trespassing" signs posted at every entryway and throughout the complex, not open to use by the public. The Commonwealth responded that, because Nathan Hale Drive connected two public roads without any restriction to the public, it met the definition of a public highway.

After considering the matter, the trial court denied Kim's motion, ruling that Nathan Hale Drive was a public highway as defined under Code § 46.2-100. In making its ruling, the trial court specifically found that there was no evidence that the owners of the apartment complex had ever closed the roads to the public or of any effort by the police to charge anyone who uses those roads with trespassing. The trial court relied on the fact that the "No Trespassing" signs at the

---

[2] The record states that Officer Cash was asked to identify the sign in a photograph labeled "[D]efense Exhibit 1." However, this exhibit was subsequently admitted into evidence as "Commonwealth Exhibit 7." Another photograph (discussed below) was offered by Kim during his case-in-chief. This subsequent photograph was eventually admitted as Defense Exhibit 1.

3

entrances "did not say 'private road, only for the use of residents'" or contain any other indicator that the roads were solely for the use of the owners or those with express or implied permission.

Kim then presented further evidence to support his argument that the streets of the complex were private roadways. Specifically, he pointed out that parking within the complex was by permit only.[3] He also presented testimony from his roommate that "[p]ersons having no valid business in the [apartment] complex are not allowed."

After he rested and the Commonwealth indicated it had no further evidence, Kim renewed his motion to strike. He reincorporated the argument from his original motion to strike and further argued that the evidence showed that he was not parked on the allegedly public road when Officer Cash found him. Rather, he was parked in a private parking spot. According to Kim, the parking spots were akin to a private driveway. In response, the Commonwealth asserted that "the parking signs only restrict parking not travel." It further claimed that where, as here, "a private road [i.e., Nathan Hale Drive] attaches literally to a thoroughfare [i.e., Patriot Drive]" and "is not a dead end," the proper inquiry is into the "use, character and being" of the road. The trial court again denied Kim's motion to strike.

The trial court subsequently determined that Kim had unreasonably refused to submit a breath sample under Code § 18.2-268.3 and ordered that his license to drive be suspended for twelve months.

Kim appeals.

---

[3] In support of this argument, he offered a photograph that was admitted as Defense Exhibit 1. The photograph shows one of the above mentioned "No Trespassing" signs and a stop sign with two smaller signs below it. The first of the two signs states "PARKING BY PERMIT ONLY" and "TRESPASSING VEHICLES SUBJECT TO TOWING AT THE VEHICLE OWNER'S EXPENSE." The second sign states "Permit Parking" and "TOWING ENFORCED." Both signs also contain contact information in the event a vehicle is towed.

## II. ANALYSIS

To place the present case in context, it is useful to first review the statutes at issue. Code § 18.2-268.2(A), the implied consent law, provides that any person who is arrested for DUI while operating a motor vehicle "upon a highway, as defined in [Code] § 46.2-100, in the Commonwealth" is deemed to have consented to have samples of breath, blood or both, taken to determine the alcohol content of the person's blood. If the person, after having been advised by the arresting officer of the implied consent provisions, refuses to give the required breath or blood sample, he may be charged with unreasonable refusal under Code § 18.2-268.3. The first violation of Code § 18.2-268.3 is a civil offense, but subsequent violations are criminal offenses. Code § 18.2-268.3(D).

Of particular import to the present case is the fact that Code § 18.2-268.2(A) only applies to the operation of a motor vehicle "upon a highway, as defined in § 46.2-100, in the Commonwealth." Kim has maintained throughout this case that Nathan Hale Drive was not a highway as defined by Code § 46.2-100. If Kim is correct, then he could not have been found to have unreasonably refused to submit a breath sample under Code § 18.2-268.3 because the implied consent statute had no applicability.

Code § 46.2-100 defines a highway as

> the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys, and, for law-enforcement purposes, (i) the entire width between the boundary lines of all private roads or private streets that have been specifically designated "highways" by an ordinance adopted by the governing body of the county, city, or town in which such private roads or streets are located and (ii) the entire width between the boundary lines of every way or place used for purposes of vehicular travel on any property owned, leased, or controlled by the United States government and located in the Commonwealth.

5

The determination of whether a "way" falls within the definition of "highway" under Code § 46.2-100 turns on the proper application of the law to the particular facts of the case. Thus, our determination of whether Nathan Hale Drive is a highway "presents a mixed question of law and fact." *Caplan v. Bogard*, 264 Va. 219, 225, 563 S.E.2d 719, 722 (2002). To properly review the trial court's application of the law to the facts, "[w]e give deference to the trial court's factual findings and view the facts in the light most favorable to . . . the prevailing part[y] below." *Id.* Where, as here, "the essential facts are undisputed, we are presented only with a question of law regarding the circuit court's application of the law to those facts and therefore apply a de novo standard of review." *Rodriguez v. Leesburg Bus. Park, LLC*, 287 Va. 187, 193, 754 S.E.2d 275, 278 (2014). *See also Mulford v. Walnut Hill Farm Grp., LLC*, 282 Va. 98, 106, 712 S.E.2d 468, 473 (2011) ("[T]he ultimate conclusion as to whether [a] roadway [is] a public road is reviewed de novo.").

The question of whether a particular "way" falls within the statutory definition of "highway" has been previously addressed by this Court and others. In *Prillaman v. Commonwealth*, 199 Va. 401, 100 S.E.2d 4 (1957), the issue before the Court turned on whether the parking lot of a service station was a statutory highway. The Court held that the parking lot did not fall within the definition of a highway, because it was

> open to the public upon [the owner's] invitation. The invitation was for private business purposes and for his benefit. [The owner] had the absolute right at any time to terminate or limit this invitation. He could close his doors and bar the public or any person from vehicular travel on all or any part of his premises at will. He had complete control of their use.

*Id.* at 407-08, 100 S.E.2d at 8-9.

In contrast, a highway, this Court has said,

> is a way open to the general public without discrimination, distinction or restriction except to regulate in order to secure to the

6

general public the maximum benefit therefrom and enjoyment thereof. There must be common enjoyment on the one hand and the duty of public maintenance on the other. It is the right of travel by everyone and not the exercise of the right that establishes a way a public highway.

*Id.* at 408, 100 S.E.2d at 9.

In *Kay Management Co. v. Creason*, 220 Va. 820, 263 S.E.2d 394 (1980), the Court addressed the question of whether the privately owned and maintained streets of an apartment complex were statutory highways. It was noted that the streets in *Kay Management* "were paved, curbed, and bordered by sidewalks." *Id.* at 830, 263 S.E.2d at 400. However, nothing in the record indicated "that the streets or roadways of the complex were restricted exclusively to the private use of the apartment dwellers or those persons who visited them" or "that access was denied to the public by security guards, gates, or warning signs." *Id.* at 830, 263 S.E.2d at 400-01. The Court determined that, based on these facts, the streets were statutory highways. In reaching this conclusion, the Court specifically distinguished a portion of the holding in *Prillaman*, explaining that the statutory definition of highway contains "no requirement of public maintenance" and, therefore, "ways on private property that are open to public use for vehicular travel" could also be highways under the statute. *Id.* at 831-32, 263 S.E.2d at 401.

In *Furman v. Call*, 234 Va. 437, 362 S.E.2d 709 (1987), the Court addressed the question of whether the parking area in a condominium office complex was a statutory highway. The facts in *Furman* were similar to those in *Kay Management* in that "the complex [was] open for vehicular traffic 24 hours a day, seven days a week" and "[n]o guard or barricade system prevent[ed] the public from driving at will through the complex." *Id.* at 438, 362 S.E.2d at 710. The key distinction between *Kay Management* and *Furman* was the fact that, in *Furman*, there was a sign at each entrance to the property that stated "Private Property, No Soliciting." *Id.* The Court determined that, notwithstanding the presence of the signs, the parking area was a statutory

highway. *Id.* at 441, 362 S.E.2d at 711. The Court explained that the signs were not dispositive because "the purpose of the signs [was] to prohibit soliciting, not the entry of motor vehicles operated by members of the public." *Id.*

The Court of Appeals, in *Flinchum v. Commonwealth*, 24 Va. App. 734, 485 S.E.2d 630 (1997), considered whether the parking lots of a sporting goods store and a car repair business were sufficiently open to the public to render them statutory highways. Noting that a "No Trespassing" sign was posted on the property of the car repair business, the Court of Appeals held that the parking lots were not statutory highways because the sign demonstrated that the parking lots were only intended to be open to the public upon invitation. *Id.* at 736-37, 485 S.E.2d at 631. As the Court of Appeals explained, a "No Trespassing" sign "clearly serve[s] to 'prohibit . . . the entry of motor vehicles operated by members of the public.'" *Id.* at 737, 485 S.E.2d 631 (quoting *Furman*, 234 Va. at 441, 362 S.E.2d at 711).

In *Roberts v. Commonwealth*, 28 Va. App. 401, 504 S.E.2d 890 (1998), the Court of Appeals again addressed this issue. In *Roberts*, the defendant was driving a vehicle through the parking lot of a convenience store. The parking lot was privately owned and maintained, but the premises were open to the public (i.e., there were no "signs that indicated that access to the area was restricted in any way"). *Id.* at 402, 504 S.E.2d at 890. However, there was evidence that the manager of the convenience store was authorized to ask individuals to leave the premises, had previously called the police to have individuals removed from the premises, and "such persons were sometimes charged with trespassing." *Id.* at 403, 504 S.E.2d at 891. Based on these facts, the Court of Appeals determined that the parking lot was not a statutory highway, because "[t]he owner [of the premises] and its employees retained the right to ask persons to leave the property and to have trespassers removed by the police." *Id.* at 406, 504 S.E.2d at 892.

8

In *United States v. Smith*, 395 F.3d 516 (4th Cir. 2005), the United States Court of Appeals for the Fourth Circuit was required to address whether the access road outside the main gate of the CIA headquarters in McLean, Virginia was a highway under Code § 46.2-100.[4] In *Smith*, the access road was not barred by guards or gates. *Id.* at 520. There were, however, signs posted along the access road "advising that only CIA employees and those with authorized business may enter CIA property." *Id.* According to the Fourth Circuit "[t]he presence of signs barring public entry establishes that the access road is not open to public use, and thus is not a highway under Virginia law." *Id.* (citing *Furman*, 234 Va. at 441, 362 S.E.2d at 711).

In *Caplan v. Bogard*, 264 Va. 219, 563 S.E.2d 719 (2002), this Court again considered this issue in order to determine whether the entryway to a restaurant's private parking lot was a highway as defined by Code § 46.2-100. The plaintiff in *Caplan* sought to prove that the entryway was a highway by introducing evidence that there was no physical barrier preventing entrance to the parking lot when the restaurant is closed. In addressing this argument, this Court held that such evidence, without more, was insufficient to establish that the entryway was a highway because the party seeking to prove a way is a highway must do more than simply show that access to the way is not controlled by physical barriers or security guards. *Id.* at 227, 563 S.E.2d at 724. Indeed, as the Court noted, "[t]o hold otherwise would have unintended and unreasonable consequences." *Id.* at 227-28, 563 S.E.2d at 724.

As these cases establish, the determination of whether a way is a statutory highway does not turn on who owns or maintains the way. *See Kay Management*, 220 Va. at 831-32, 263

_____

[4] At the time of the Fourth Circuit's ruling in *Smith*, Code § 46.2-100 did not include any language that expressly incorporated ways or places used for vehicular travel on property "owned, leased, or controlled by the United States government and located in the Commonwealth" into the definition of highway. *See* 2006 Acts ch. 540.

S.E.2d at 401 (holding that "ways on private property that are open to public use for vehicular travel" could also be highways under the statute). Rather, the determination turns on "'whether the way or place of whatever nature is open to the use of the public for purposes of vehicular travel.'" *Caplan*, 264 Va. at 226, 563 S.E.2d at 723 (quoting *Prillaman*, 199 Va. at 407, 100 S.E.2d at 8). Furthermore, establishing that a way is "open to the use of the public" requires more than simply showing that the public can or has used the way, *see Prillaman*, 199 Va. at 408, 100 S.E.2d at 9 (recognizing that the public use alone does not establish a way as a public highway); it requires a showing that the public has *unrestricted access* to the way. *See Caplan*, 264 Va. at 227, 563 S.E.2d at 724. Thus, we have explained that

> the party seeking to establish that a particular way is a highway has the initial burden of presenting evidence of unrestricted access to the public. A sufficient showing of unrestricted access gives rise to the presumption that the way is a highway. Once this presumption is found to be applicable, the opposing party has the burden to rebut the presumption by showing that the area was open only to those with "express or implied permission from the owner[]."

*Id.* at 227, 563 S.E.2d at 724 (quoting *Kay Management*, 220 Va. at 832, 263 S.E.2d at 402).

In the present case, the Commonwealth had the initial burden of presenting evidence establishing that the public had unrestricted access to the roads of the apartment complex. In order to meet this burden, the Commonwealth was required to do more than simply show that entry into the apartment complex was not controlled by physical barriers or security guards. *Id.* at 227-28, 563 S.E.2d at 724. Although we have never explicitly stated what further evidence of unrestricted access is necessary to give rise to the presumption, we have implied that the lack of a physical barrier in conjunction with evidence that the roads at issue are named, feature traffic signs, curbs, and sidewalks, would amount to a sufficient showing of unrestricted access to give rise to the presumption that the road is a highway. *Id.* at 228, 563 S.E.2d at 724 (citing *Kay*

10

*Management*, 220 Va. at 830, 263 S.E.2d at 400). As the photographic evidence in the present case conclusively establishes that the roads in the complex, including Nathan Hale Drive, were named, paved, curbed, bordered by sidewalks and had posted traffic signs, the Commonwealth met its initial burden and the presumption is applicable.

The burden then shifted to Kim to rebut the presumption that Nathan Hale Drive was a highway pursuant to Code § 46.2-100. In seeking to rebut the presumption, Kim adduced testimony from Officer Cash regarding the presence of "No Trespassing" signs "at all entry points into the [apartment] complex and at several points throughout the complex road network." To reiterate this point, Kim had Officer Cash specifically mark the location of the signs on a map that was entered into evidence. The map demonstrates that a "No Trespassing" sign was, in fact, posted at every access point from a public road to Nathan Hale Drive.

The trial court determined that the presence of the "No Trespassing" signs alone was not sufficient to rebut the Commonwealth's presumption. In making this ruling, the trial court noted that the roads in the apartment complex were open to the public 24 hours a day, they had never been closed to the public, there was no evidence that the police had charged anyone using the roads with trespassing, and the "No Trespassing" signs did not expressly reference the roads within the apartment complex.[5] Indeed, the trial court explicitly relied on the fact that "[t]he signs did not say 'private road, only for the use of residents' or any other indicator solely for use of the owners or those having implied permission of the owners." As the trial court's ruling was pointedly focused on the content of the "No Trespassing" signs, our analysis begins with whether

---

[5] It should be noted that, at the time the trial court made this ruling, the only sign before it was the "No Trespassing" sign shown in Commonwealth Exhibit 7.

the trial court gave proper consideration to the legal effect of such posted "No Trespassing" signs.

"Trespass is the unauthorized use of or entry onto another's property." *Jaynes v. Commonwealth*, 276 Va. 443, 459, 666 S.E.2d 303, 311 (2008). Code § 18.2-119 establishes that a "No Trespassing" sign, posted in a location "where it may be reasonably seen," prohibits individuals "without authority of law" from entering or remaining upon "the lands, buildings or premises of another, or any portion or area thereof."[6] As this Court has repeatedly admonished, when interpreting statutes, "courts are required to apply the plain meaning of statutes, and we are not free to add language, nor to ignore language, contained in statutes." *Signal Corp. v. Keane Fed. Sys.*, 265 Va. 38, 46, 574 S.E.2d 253, 257 (2003). Mindful of this admonishment, we note that Code § 18.2-119 contains no language that could be interpreted as allowing individuals to ignore a posted "No Trespassing" sign and enter certain portions of another's property simply because those portions of the property are accessible to the public and open to vehicular traffic. Similarly, nothing in the statute indicates that a "No Trespassing" sign needs to be directed at a specific form of traffic in order to be effective. Rather, the plain language of the statute dictates that a "No Trespassing" sign posted in a location where it may be reasonably seen prohibits any and all unauthorized entry onto the entirety of the premises. *See, e.g., Jordan v. Commonwealth*, 207 Va. 591, 596, 151 S.E.2d 390, 394 (1966) (recognizing that "No Trespassing" signs posted on a vacant building applied to the entirety of the premises). Thus, it is clear that "No

_____

[6] Code § 18.2-119 states, in relevant part:
> If any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, . . . after having been forbidden to do so by a sign or signs posted by or at the direction of such persons or the agent of any such person . . . at a place or places where it or they may be reasonably seen . . . he shall be guilty of a Class 1 misdemeanor.

12

Trespassing" signs conspicuously posted at every entrance to a privately owned apartment complex could only be interpreted as explicitly prohibiting the public from accessing the entire apartment complex, including the privately owned roads located therein.

This conclusion logically flows from our holding in *Furman*, where a sign stating "Private Property, No Soliciting" served only "to prohibit soliciting, not the entry of motor vehicles operated by members of the public," *Furman*, 234 Va. at 441, 362 S.E.2d at 711. Consequently, a sign stating "Private Property," "No Soliciting" and "No Trespassing" serves not only to prohibit soliciting but also the entry of members of the public.[7] Such was the conclusion of the Court of Appeals in *Flinchum*. Indeed, in recognizing the import of a "No Trespassing" sign, the Court of Appeals explicitly relied on our holding in *Furman* and stated that such signs "clearly serve[] to 'prohibit . . . the entry of motor vehicles operated by members of the public.'" *Flinchum*, 24 Va. App. at 737, 485 S.E.2d at 631 (quoting *Furman*, 234 Va. at 441, 362 S.E.2d at 711).

The trial court compounded its mistake by focusing on the lack of evidence that anyone had ever been charged with trespassing for using the roads. In so doing, the trial court equated lack of enforcement with unrestricted access. However, as we explained in *Prillaman*, "[i]t is the *right* of travel by everyone and not the exercise of the right that establishes a way a public highway." 199 Va. at 408, 100 S.E.2d at 9 (emphasis added). Here, the fact that the owners of the apartment complex did not seek to actively enforce the "No Trespassing" signs with regard to

---

[7] Although *Furman* specifically mentions the "entry of motor vehicles operated by members of the public," 234 Va. at 441, 362 S.E.2d at 711, we note that Code § 18.2-119 makes no distinction as to the manner in which a person "goes upon . . . the lands, buildings or premises" of another. Thus, a posted "No Trespassing" sign must be interpreted to prohibit any and all means by which a person may "go[] upon . . . the lands, buildings or premises" of another.

motorists does not mean that the public has unrestricted access to the roads of the apartment complex.[8]

Moreover, this Court appears to have implicitly recognized that such a broad prohibition on accessing an area is sufficient to rebut the presumption that a way is a highway. Notably, in *Caplan*, this Court held that the party seeking to rebut the presumption may do so "by showing that the *area* was open only to those with 'express or implied permission from the owner[].'" 264 Va. at 227, 563 S.E.2d at 723 (quoting *Kay Management*, 220 Va. at 832, 263 S.E.2d at 402) (emphasis added). The use of the broad term "area," as opposed to a more specific term, such as way, road, street, etc., clearly indicates that the Court recognized that a general restriction on public access is sufficient to rebut the presumption. Moreover, once the area has been shown to be restricted, such restriction, necessarily includes the roads therein. Therefore, the presumption that a way is a highway cannot stand in the face of evidence proving that the public's access was restricted in this broad manner.

Thus, we conclude that the presence of "No Trespassing" signs at every vehicular entry point to the apartment complex necessarily restricts the public's access to the apartment complex as a whole. Such a restriction axiomatically negates any consent to access the roads within the apartment complex that may be implied by the lack of physical barriers or the fact that the roads are named, paved, curbed, bordered by sidewalks and have posted traffic signs. *See Robinson v. Commonwealth*, 273 Va. 26, 34-35, 639 S.E.2d 217, 222 (2007) (recognizing that implied

---

[8] The lack of trespassing arrests for the use of the roads can further be explained by our decisions in *Harris v. Commonwealth*, 262 Va. 407, 414-17, 551 S.E.2d 606, 610-11 (2001) and *Ewell v. Commonwealth*, 254 Va. 214, 217, 491 S.E.2d 721, 723 (1997), where we held that a police officer's mere suspicion that an individual was trespassing in an apartment complex, without more, did not amount to a sufficient reasonable, articulable suspicion to justify a non-consensual investigatory detention, much less an arrest.

14

consent to access a location "can be negated by obvious indicia of restricted access, such as posted 'no trespassing' signs, gates, or other means that deny access to uninvited persons."). Accordingly, by presenting evidence that established the presence of "No Trespassing" signs at every entrance to the apartment complex, Kim has shown that Nathan Hale Drive is not "open to the use of the public" for any purpose, including vehicular travel. Therefore, Kim has met his burden and, consequently, rebutted the presumption that Nathan Hale Drive is a highway pursuant to Code § 46.2-100.

### III. CONCLUSION

To meet the statutory definition of highway under Code § 46.2-100, a "way or place" must be "open to the use of the public for purposes of vehicular travel." Here, the presence of several conspicuously posted "No Trespassing" signs establishes that Nathan Hale Drive is not "open to the use of the public" for any reason. Therefore, Nathan Hale Drive cannot meet the statutory definition of highway under Code § 46.2-100. As a result, the implied consent statute had no applicability and Kim was not required to submit a breath sample. Accordingly, we will reverse the judgment of the trial court and dismiss the warrant issued against Kim for unreasonable refusal to submit a breath sample under Code § 18.2-268.3.

*Reversed and dismissed.*


JUSTICE KELSEY, with whom CHIEF JUSTICE LEMONS and JUSTICE McCLANAHAN join, dissenting.

Sitting as factfinder, the trial court found that Nathan Hale Drive was a private road open to the public and, thus, a "highway" under Code § 46.2-100. My colleagues in the majority find that the facts irrefutably prove the opposite and that no reasonable factfinder could hold otherwise. I respectfully disagree.

15

I.

On appeal, we retell the factual narrative of a case — both the readily observable facts and the inferences drawn from them — in the light most favorable to the prevailing party in the trial court. *See Vasquez v. Commonwealth*, 291 Va. 232, 236, 781 S.E.2d 920, 922, *cert. denied*, ___ U.S. ___, 137 S. Ct. 568 (2016). We view the evidence through this prism without the need of a scribal record of every factual inference the factfinder found reasonable.

We also presume the factfinder relied upon any reasonable inferences that *could be* discerned from the record in support of its decision. *See Du v. Commonwealth*, 292 Va. 555, 566, 790 S.E.2d 493, 500 (2016); *Haynes v. Haggerty*, 291 Va. 301, 305, 784 S.E.2d 293, 294 (2016). "[O]ur appellate review 'is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling.'" *Du*, 292 Va. at 566, 790 S.E.2d at 500 (quoting *Perry v. Commonwealth*, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010)); *see also Bolden v. Commonwealth*, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008); *Commonwealth v. Jenkins*, 255 Va. 516, 522, 499 S.E.2d 263, 266 (1998).

Viewed from this perspective, the trial court record reveals that Officer Richard Cash of the Fairfax County Police Department testified that Nathan Hale Drive connects, either directly or indirectly, to three public highways maintained by the Virginia Department of Transportation ("VDOT"). Nathan Hale Drive is not a dead-end, a cul-de-sac, a parking lot, or a mere entrance to an apartment complex. Nor does it have any physical entrance barriers, security guard posts, or entry checkpoints. Nathan Hale Drive is a thoroughfare enabling access to and from three public highways in addition to providing vehicular access to and parking for the Avant Apartments complex.

On March 11, 2015, at 4:30 a.m., Officer Cash found Kim in a vehicle that had been erratically parked in one of the perpendicular parking spots on Nathan Hale Drive. Officer Cash described Nathan Hale Drive as an "open private roadway" that included "perpendicularly placed parking spaces along its side." J.A. at 19. Kim's vehicle had been driven diagonally over the curb, which left almost half of the rear of the vehicle on the grassy median, as Officer Cash's photo showed.



The key was in the ignition of the vehicle with the engine running, the headlights on, and the radio playing. Kim was sitting in the driver's seat but was slumped over the passenger's seat, and he was "confused, lethargic, and disoriented." *Id.* at 20. The officer offered Kim three field sobriety tests, and after Kim did not follow the pen with his eyes in the Horizontal Gaze

Nystagmus test, Kim said that he did not speak English and refused to perform the other two sobriety tests offered to him. Officer Cash then arrested him for driving under the influence and took him to the police station for a breath test. Kim refused to take the test because, as he put it in English, "this is just a stupid DUI. I will be out in the morning." *Id.* at 21. He then launched at the officer a fusillade of profanity to reinforce his confidence on this point.

The trial court also received exhibits and heard testimony about the signs on Nathan Hale Drive and at the adjacent Avant Apartments complex. The evidence revealed that there were several different signs on the premises. The signs were posted at various places throughout the apartment complex, including the entrance areas.

Only one exhibit demonstrated the location of these signs at one of the entrances to the apartment complex. Two signs were posted below the red stop sign at the entrance depicted and directly faced entering motorists. Both signs stated that parking was by permit only and that towing would be enforced. *See* Oral Argument Audio at 9:10 to 9:30; *see also* Def.'s Ex. 1, *infra* at 4.

The title of the middle sign read, "PARKING BY PERMIT ONLY," and underneath that heading, it stated, "TRESPASSING VEHICLES SUBJECT TO TOWING AT THE VEHICLE OWNER'S EXPENSE." Def.'s Ex. 1, *infra* at 4. Neither sign said anything along the lines of "Private Drive," "Do Not Enter," or "No Thoroughfare." Nor did either sign purport to forbid public travel along Nathan Hale Drive or to warn that such travel would be trespassing. By its express terms, the "PARKING BY PERMIT ONLY" sign only forbade non-permitted vehicles from parking in permit-only parking spaces. It was these parked vehicles that the sign warned would be subject to towing.

18

A third sign stood alone and stated: "AVANT APARTMENTS PRIVATE PROPERTY." J.A. at 11 (Commonwealth's Ex. 7). It also warned: "No Soliciting Loitering Trespassing" and "VIOLATORS WILL BE PROSECUTED." *Id.* This sign hung on a pole in the grass next to a sidewalk leading to one of the buildings in the apartment complex. The sign did not point in the direction of or face incoming vehicular traffic and sat back farther from Nathan Hale Drive at an inconspicuous angle given the vantage point of a typical motorist. Instead, it appeared to be directed along the adjacent sidewalk. Officer Cash testified that he and other police officers had arrested trespassers "at the complex" without any mention of arresting trespassers that drove on Nathan Hale Drive. *Id.* at 22.

An exhibit at trial showed the configuration of the signage on the stop-sign pole, which faced vehicular traffic, and the private-property sign to its right, which flanked the sidewalk.



The trial court reviewed this evidence and, sitting as factfinder, found that Nathan Hale Drive was a "highway" because it was "open to 24 hour vehicular travel" and did not have gates or security guards. *Id.* at 27. "There was no evidence," the court observed, that "the [apartment] complex roads were closed in any way or for any period of time, [and] no evidence of any effort of the police to charge anyone on those roads with trespassing." *Id.*

The trial court pointed out, in its denial of Kim's first motion to strike after the Commonwealth's case-in-chief, that the private-property sign "did not say 'private road, only for the use of residents' or *any other indicator* solely for the use of the owners or those having implied permission of the owners." *Id.* (emphasis added). The trial court commented on the signs facing vehicular traffic when it denied Kim's second motion to strike at the conclusion of the case by stating that "the parking signs are not dispositive because one can have such restrictions on public highways." *Id.* at 30.

Necessarily implicit in the trial court's statements were two findings based on the evidence presented by both the Commonwealth and Kim: (i) The private-property sign flanking the sidewalk was not directed at vehicular traffic but rather to individuals trespassing into the buildings and onto the grounds of the apartment complex; and (ii) The middle sign on the stop-sign pole limited its trespassing warning to *non-permitted* vehicles parked in *permit-only* parking spaces and, thus, subject to towing at the owner's expense. "Accordingly," the trial court "found Nathan Hale Drive to be a 'highway'" open to the public. *Id.* at 27.

## II.

## A.

Without expressly acknowledging it, the majority makes its own factual inference that undermines the trial court's ruling. The majority infers that the no-trespassing signs throughout

20

the apartment complex were directed at *motorists* — not just pedestrians or non-permitted parked vehicles. The majority further infers that these signs warned motorists that Nathan Hale Drive (in addition to the apartment buildings, grounds, and permit-only parking spaces) was not open to the public and, thus, exposed uninvited motorists to the risk of being prosecuted for trespassing. *See ante* at 14. No witness ever testified that the signs were directed to motorists, and no evidence demonstrated that any motorists were ever charged with trespassing. Only one picture in the record shows the placement and language of these signs at one particular entrance, and that picture is far more consistent with the opposite inference — that the signs applied not to motorists traveling down Nathan Hale Drive but to pedestrians walking into the buildings and onto the grounds of the apartment complex and to non-permitted vehicles parked in permit-only parking spaces.

In support of its inference, the majority reasons that (i) Officer Cash testified that similar signs appeared at all entrances to Nathan Hale Drive, and thus, (ii) all motorists were warned by "conspicuously posted" signs that Nathan Hale Drive restricted public access and that driving upon it could lead to a trespassing charge. *See ante* at 11-13. I see no basis for this assumption. To me, it simply amounts to piling one inference upon another.

Officer Cash did say that these various signs appeared at the entrances to Nathan Hale Drive and marked these locations with an "X" on a map. He never said, however, how the signs were positioned at each of these locations, what they specifically stated, or whether they were directed at vehicular traffic on Nathan Hale Drive. The only evidence addressing this crucial issue was the exhibit depicting one particular entrance, *see* Def.'s Ex. 1, *supra* at 4, that shows the signs facing motorists, which prohibited trespassing in permit-only parking spaces, and a

private-property sign flanking a sidewalk and facing pedestrians approaching the buildings and grounds of the apartment complex.

The issue is not the *presence* of the signs but rather the scope of *notice* provided by the signs. As a matter of law, no-trespassing signs must be posted "at a place or places where it or they may be reasonably seen" before one can be convicted of trespassing. Code § 18.2-119. "Posted notice is not effective *unless* placed where it can reasonably be seen." 7 Ronald J. Bacigal, Virginia Practice Series: Criminal Offenses and Defenses 594 (2016-2017 ed.) (emphasis added). To justify its reversal, the majority must show more than the fact that no-trespassing signs existed on the premises. Like the trial judge, I accept that as a given. To reverse, the evidence must irrefutably prove (to the extent that a rational factfinder could not conclude otherwise) that *motorists* traveling on Nathan Hale Drive would have been reasonably warned by visible signs that they could be convicted of trespassing.

The majority's reasoning becomes even less convincing when framed within applicable burden-of-production principles governing the question whether a particular road constitutes a "highway" under Code § 46.2-100. Our case law makes clear

> that the party seeking to establish that a particular way is a highway has the initial burden of presenting evidence of unrestricted access to the public. A sufficient showing of unrestricted access gives rise to the presumption that the way is a highway. Once this presumption is found to be applicable, the opposing party has the burden to rebut the presumption by showing that the area was open only to those with "express or implied permission from the owner."

*Caplan v. Bogard*, 264 Va. 219, 227, 563 S.E.2d 719, 723 (2002) (alteration omitted) (quoting *Kay Mgmt. Co. v. Creason*, 220 Va. 820, 832, 263 S.E.2d 394, 402 (1980)).[1] The majority

---

[1] *See also Furman v. Call*, 234 Va. 437, 440, 362 S.E.2d 709, 711 (1987); *Seaborn v. Commonwealth*, 54 Va. App. 408, 411-13, 679 S.E.2d 565, 567-68 (2009); *Roberts v.*

22

concedes that the Commonwealth carried its "initial burden of presenting evidence of unrestricted access to the public." *Id.*;[2] *see ante* at 11.

Officer Cash's testimony and the trial exhibits were sufficient to satisfy this threshold burden and, thereby, to give rise to "the presumption that the way [was] a highway." *Caplan*, 264 Va. at 227, 563 S.E.2d at 723. The burden of production then shifted to Kim to "rebut the presumption" by showing that Nathan Hale Drive was not open to the public. *Id.* Kim attempted to do that by pointing exclusively to the no-trespassing and permit-only parking signs and by

---

*Commonwealth*, 28 Va. App. 401, 404, 504 S.E.2d 890, 891 (1998), *cited with approval in Caplan*, 264 Va. at 226-27, 563 S.E.2d at 723; *Coleman v. Commonwealth*, 16 Va. App. 747, 749, 433 S.E.2d 33, 34-35 (1993). *See generally* Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 4-15[e], at 255, 257 (7th ed. 2012) (listing public accessibility as creating "a rebuttable presumption that streets are highways" in criminal cases and noting that this presumption is "in reality nothing more than [a] permissible inference[]").

Although this framework creates a rebuttable presumption for a first offense of the refusal statute, which is tried like a misdemeanor despite its civil nature, *see* Code § 18.2-268.4, "our general rule is to give rebuttable presumptions permissive or burden-of-production-shifting effect only." *Wilson v. Commonwealth*, 225 Va. 33, 41, 301 S.E.2d 1, 5 (1983); *see also Gibson v. Commonwealth*, 287 Va. 311, 320 n.3, 756 S.E.2d 460, 465 n.3 (2014) ("The burden of proof is not to be confused with the burden of going forward to produce evidence. . . . When a plaintiff presents a prima facie case, the burden of producing evidence to overcome that prima facie case . . . then shifts to the defendant. The same is true in a criminal prosecution." (citations omitted)).

[2] *See, e.g.*, *Caplan*, 264 Va. at 227-28, 563 S.E.2d at 724 (finding that the plaintiff failed to carry the initial burden and concluding that no presumption of a highway arose from the mere absence of a chain or barrier physically blocking the entrance of a restaurant parking lot when the restaurant was closed); *Furman*, 234 Va. at 440-41, 362 S.E.2d at 711 (finding that a presumption of a highway arose when a condominium complex's parking area was "open to the public 24 hours a day, seven days a week"; public access was never denied by "guards, gates, or any other device"; and the purpose of the "Private Property, No Soliciting" sign was "to prohibit soliciting, not the entry of motor vehicles" (emphasis omitted)); *Kay*, 220 Va. at 830-32, 263 S.E.2d at 400-02 (finding that a presumption of a highway arose when a paved and named access road, which was privately owned and maintained at an apartment complex, had "posted traffic signs," curbs, sidewalks, and a well-defined travel section of the road between the perpendicular parking spots on either side, and finding that there was no evidence of "security guards, gates, warning signs," or other indicia of exclusive access).

contending (successfully it turns out on appeal) that these signs forbade uninvited members of the public from traveling from one VDOT public highway to another via Nathan Hale Drive.

It is quite true that if the no-trespassing signs were clearly directed at motorists traveling on Nathan Hale Drive, then the most natural inference would be that the road was not open to the public. The trial court, however, rejected that inference — no doubt because it was not at all clear that any of the no-trespassing signs were directed at vehicular traffic in addition to pedestrians and non-permitted parked vehicles. The question on appeal now becomes whether "*any* rational trier of fact *could have*" rejected this inference and, instead, *could have* adopted the opposite inference. *Vasquez*, 291 Va. at 248, 781 S.E.2d at 929 (second emphasis added) (citation omitted).

We ordinarily answer this question with "the highest degree of appellate deference." *Id.* (citation omitted). That deference "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved." *Sullivan v. Commonwealth*, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010).[3] Here, after viewing the facts and inferences in the light most favorable to the Commonwealth, this Court must ask only one question: whether any rational trier of fact *could have found* that the private-property sign flanking the sidewalk and the warning sign on the stop-sign pole applied to pedestrians entering the buildings and grounds of the apartment complex and to non-permitted vehicles parking in permit-only parking spaces — but *not* to motorists merely traveling down Nathan Hale Drive. I believe a reasonable factfinder could come to that conclusion, particularly given the applicable burden-of-production framework.

---

[3] These principles apply "with equal force" to bench trials and jury trials alike. *Cobb v. Commonwealth*, 152 Va. 941, 953, 146 S.E. 270, 274 (1929).

B.

Although the majority does not address this point, Kim also argues that the evidence was insufficient by pointing out that Officer Cash discovered him drunk in his vehicle in a private parking spot (at least mostly so) and arrested him there. According to Kim, this fact leads to the conclusion that he could not have violated the refusal statute because the parking spot where he was found was not a highway. *See* Appellant's Br. at 2, 6-7. This argument suffers from several conceptual flaws.

As pertinent here, Code § 18.2-268.3(A) states: "It shall be unlawful for a person who is arrested" for driving under the influence "to unreasonably refuse to have samples" of his breath "taken for chemical tests to determine the alcohol or drug content of his blood as required by § 18.2-268.2 [implied-consent statute]." There are only two elements to this offense: a DUI arrest and an unreasonable refusal. The DUI arrest need not result in a conviction. *See Cash v. Commonwealth*, 251 Va. 46, 49, 466 S.E.2d 736, 738 (1996); *Deaner v. Commonwealth*, 210 Va. 285, 289, 170 S.E.2d 199, 201 (1969).

Under Code §§ 18.2-268.3(A) and 18.2-268.2(A), it makes no difference that the physical arrest took place in a parking spot, or for that matter, in Kim's living room. The implied consent statute places only one limit on the DUI *arrest* — that it occurs "within three hours of the alleged [DUI] offense." Code § 18.2-268.2(A). For a finding of guilt under the refusal statute, of course, the intoxicated driving that results in the DUI arrest must take place on a highway. *Compare* Code § 18.2-268.3(A) (stating that it is unlawful for one arrested for driving under the influence to unreasonably refuse a breath test "as required by § 18.2-268.2"), *with* Code § 18.2-268.2(A) (deeming a person "who operates a motor vehicle upon a *highway*, as defined in § 46.2-100" to have consented to a breath test if he is arrested for DUI "within three hours of the

25

alleged offense" (emphasis added)). But we should not confuse the place of a DUI arrest with the place where the DUI driving offense occurred.[4]

Perhaps underlying this argument is the legitimate concern that there must be at least some reasonable basis for the DUI arrest that leads to a refusal charge. If that is the concern, I agree. There should be a probable-cause basis for the DUI arrest. *See Brame v. Commonwealth*, 252 Va. 122, 132-33, 476 S.E.2d 177, 183 (1996) (affirming a finding of guilt for refusal to take a breath test, despite the fact that the trial court found the defendant not guilty of driving under the influence, because "his arrest for driving while intoxicated was based upon probable cause," and "at the time of his arrest, [defendant] posed at least a potential threat to the safety of others using the highway"); *Commonwealth v. Gray*, 248 Va. 633, 637, 449 S.E.2d 807, 810 (1994)

---

[4] For example, in *Wallace v. Commonwealth*, an officer observed the defendant making abrupt turns on a highway without signaling or decelerating as well as briefly swerving out of his lane of travel, and subsequently, the officer stopped the defendant after he pulled into a private driveway where he arrested him for driving under the influence after he failed several field sobriety tests. 32 Va. App. 497, 500-02, 528 S.E.2d 739, 740-41 (2000); *see also Ramos v. Commonwealth*, Record No. 1774-13-4, 2015 Va. App. LEXIS 270, at *2-4, *8-9 (Sept. 22, 2015) (unpublished) (finding that "all of the attendant circumstances, taken together, were sufficient to allow a jury reasonably to conclude that appellant operated the car on a public road" when a homeowner called the police after discovering the intoxicated appellant attempting to change a tire on a car in the homeowner's driveway and after the appellant admitted to the homeowner that "he had hit something" with the car).

Other state courts also distinguish the private locus of a DUI arrest from the public locus of a DUI offense. *See, e.g.*, *State v. Roth*, 932 A.2d 1071, 1076 (Conn. App. Ct. 2007) (affirming a DUI conviction because "there was sufficient evidence by which the jury reasonably could infer that the defendant operated a motor vehicle on a public highway" and finding it unnecessary to determine whether the location of defendant's arrest was a public highway or private street); *People v. Collins*, 417 N.Y.S.2d 819, 821 (N.Y. App. Div. 1979) (finding "ample circumstantial evidence that [the defendant] operated his car on the highway and was intoxicated" despite the officers' discovery of the defendant in a private driveway). *See generally* 1 Richard E. Erwin, Defense of Drunk Driving Cases § 1.04[6] & n.68 (3d ed. 2017) (acknowledging that the location of the offense "can be demonstrated circumstantially by showing that the defendant had to drive through a proscribed locale in order to get to the place where his or her vehicle was found").

(finding defendant's refusal "unreasonable as a matter of law" because defendant "conceded at trial that [the officer] had probable cause to arrest him for driving under the influence").

"When used as a standard of calibrating certitude, '[t]he very phrase "probable cause" confirms that the Fourth Amendment does not demand all possible precision.'" *Evans v. Commonwealth*, 290 Va. 277, 287, 776 S.E.2d 760, 765 (2015) (quoting *Herring v. United States*, 555 U.S. 135, 139 (2009)). Probable cause is "less demanding than a standard requiring a preponderance of the evidence" and "does not demand any showing that such a belief be correct or more likely true than false." *Id.* (citations omitted). Thus, "the proper inquiry focuses on what an objective officer could reasonably believe." *Id.* (citation omitted).

In this case, probable cause existed to arrest Kim for driving under the influence. Officer Cash found Kim in a vehicle with the key in the ignition, the engine running, the headlights on, and the radio playing. Kim was alone. He was sitting in the driver's seat but was slumped over the passenger's seat, and he was "confused, lethargic, and disoriented." J.A. at 20. The officer offered Kim three field sobriety tests, and he failed to properly perform one of the tests before refusing to even attempt the other two tests. His vehicle was not simply parked in a parking spot but had been driven diagonally over the curb, which left almost half of the rear of the vehicle on the grassy median.

At no point, pre-arrest, post-arrest, or at trial, did Kim ever offer the hypothesis that someone else drove the vehicle on Nathan Hale Drive and improperly parked it in the parking spot or that he did so while not intoxicated. Nor did Kim ever claim that he later climbed into the driver's seat of the parked vehicle, turned on the engine, the headlights, and the radio, and then slumped over the passenger's seat because of intoxication. Truth be told, his view of his situation was less farfetched: "[T]his is just a stupid DUI. I will be out in the morning." *Id.* at

27

21.  Under these circumstances, Officer Cash had probable cause to believe that Kim drove the vehicle into the parking spot from Nathan Hale Drive and was intoxicated when he did so.

III.

In sum, I would afford the trial court, sitting as factfinder, the full scope of its authority to draw reasonable inferences from the evidence and to reach its decision consistent with the governing burden-of-production framework.  Doing so would necessarily lead to an affirmance.

For these reasons, I respectfully dissent.