COURT OF APPEALS OF VIRGINIA

Present:   Judges Ortiz, Friedman and White
Argued at Christiansburg, Virginia

LORENZO TIAMZON MARSHALL
                                                    MEMORANDUM OPINION* BY
v.        Record No. 1026-23-3                       JUDGE DANIEL E. ORTIZ
                                                      NOVEMBER 26, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FLOYD COUNTY
K. Mike Fleenor, Jr., Judge

John S. Koehler (Jonathan Rogers; The Law Office of James Steele,
PLLC; Jonathan Rogers, P.C., on briefs), for appellant.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A parent charged with cruel treatment in violation of Code § 40.1-103(A) for disciplining

their child may be shielded from conviction under the parental privilege doctrine so long as their

corporal punishment is not excessive or immoderate.  Further a court is obligated to review the

application of the privilege to each separate applicable charge.  Lorenzo Tiamzon Marshall appeals

his conviction for violating Code § 40.1-103(A), causing a child to be cruelly treated.  Specifically,

Marshall argues that (1) the circuit court failed to apply the parental privilege to Code

§ 40.1-103(A), (2) the evidence was insufficient to prove that his actions rose to the level of child

cruelty as defined by the statute, and (3) the charged statute is unconstitutionally vague.  Although

Marshall's constitutional argument is waived, we find that the circuit court erred when it applied the

parental privilege only to Marshall's assault and battery charge but failed to consider whether it

*This opinion is not designated for publication.  See Code § 17.1-413(A).

shielded Marshall from conviction under Code § 40.1-103.  For these reasons, we reverse and remand.

BACKGROUND[1]

On April 9, 2022, eleven-year-old L.M. and nine-year-old W.M. were staying with their father, Marshall.[2]  They were preparing to leave the house when Marshall—angry that he had found discarded medicine in the trash bin that his sons should have taken—confronted the two boys.

Three hours later, the boys were with their mother at their grandmother's house.  Their mother took a photograph, showing a handprint on the left side of L.M.'s face extending from his mouth to his hairline.  The mother took L.M. to a hospital to be examined.  A report was made to the county Department of Social Services, which requested an investigation by the Sheriff's Office.

The following Monday, Detective Rusty Stanley met with the boys and their mother. Detective Stanley learned that the April 9 incident had been recorded on Ring cameras installed in Marshall's house.  The detective obtained a search warrant to retrieve the Ring camera system.

As a result of the investigation, Marshall was charged with one count of assault and battery on a family member, in violation of Code § 18.2-57.2, and one count of causing a child to be cruelly treated, in violation of Code § 40.1-103.

The bench trial consisted almost exclusively of the parties' stipulations as well as video and audio recordings from two cameras inside Marshall's house.  At the end of the trial, Marshall was acquitted of assault and battery but convicted of child cruelty.

---

[1] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[2] We identify the children by their initials to afford them privacy.

## A. Stipulations

The parties agreed that witnesses would have described L.M. as a "problem child," who exhibited behavior problems in school and in extracurricular activities. L.M. was difficult to control at times and was aggressive, starting numerous fights. He demonstrated emotional struggles and had difficulty following directions. L.M. was in therapy and his doctor prescribed him medication, which the family called "gummies" or "vitamins." L.M. had received various diagnoses, including Oppositional Defiant Disorder, Dysregulation Disorder, and Attention Deficit Hyperactivity Disorder.

## B. Ring Cameras Evidence

The Ring cameras, located in the laundry room and the kitchen, caught the altercation between Marshall and his two sons. At 8:25 a.m., Marshall yelled for his sons to come to the bathroom located next to the kitchen. He demanded to know whose "gummies" were in the trashcan. When he confronted L.M., L.M. denied throwing away the medicine. Marshall said that he knew L.M. was lying and that L.M. must admit it or "get spanked right now." Marshall then grabbed L.M.'s jacket collar under his chin and forced the child against the kitchen door, loudly demanding, "confess, now." For about ten minutes, Marshall interrogated L.M. about whether he put his medication in the trashcan rather than swallowing it as instructed. Marshall yelled forcefully—inches from L.M.'s face—for most of the encounter. Throughout the reprimanding, Marshall cursed at L.M. and mocked him, shaking and pushing him against the door—demanding L.M. confess and stop lying. Meanwhile, L.M. cried and begged his father not to hurt him.

Next, Marshall let go of his son and directed him into the kitchen. He demanded that L.M. "bend over" and submit to a spanking. L.M. continued to resist. When L.M. continued to beg Marshall not to hurt him, Marshall yelled and asked if he had ever hurt L.M. When L.M. whimpered, "yes," Marshall grabbed L.M. by the front of his coat, lifted him to his feet, and shook

him several times as he continued to yell.  When L.M. would not bend over to be spanked, Marshall put his son in a chokehold and dragged him to the ground, saying "we will do this the hard way."  Once L.M. was on the ground, Marshall held him down, pulled down his pants and administered three open palm spanks onto L.M.'s bare buttocks.  During each strike, Marshall's arm began above his head with a slight bend at the elbow and swung straight down to L.M.'s buttocks.  L.M. then rolled onto his back, screaming and crying.  Marshall struck L.M. once more on L.M.'s face.  When L.M. cried, "you didn't have to hit me across the face," Marshall replied, "yeah, because you're being a f*** up."  Marshall continued to verbally admonish L.M., until L.M. admitted that he had lied about hiding his medication in the trash.  When L.M. continued to whimper and hyperventilate, Marshall used a spray bottle to spray something in his face, telling him to "cool off, calm down."  Marshall then told L.M. to go wipe his face.  When L.M. returned, Marshall gave him a cold compress to hold against his face, stating "I'm not trying to hurt you I'm trying to help you."  Marshall lamented, "Pretty sad, [L.M.] that you disrespect me that much, that you lie to my face and think its ok, that you'll get away with it.  Unbelievable."  The entire encounter lasted approximately fifteen to twenty minutes.

### C.  Trial

At the close of the Commonwealth's case, Marshall moved to strike both charges on the ground that there was "no evidence of any significant physical injury."  The circuit court overruled the motion.  Marshall renewed the motion at the close of all the evidence, and the circuit court took the motion under advisement in a letter opinion.

In its opinion letter, the circuit court first determined whether Marshall's actions fell within the scope of parental privilege as applied to the assault and battery charge under Code § 18.2-57.2.  The court only referred to Marshall striking L.M. a total of four times—the three spanks to the buttocks and the slap to the face—rather than all of Marshall's physical conduct throughout the

entirety of the incident. It did not find any evidence of "significant harm, distinguished from transient pain or temporary minor marks." *Woodson v. Commonwealth*, 74 Va. App. 686, 699 (2022). In the absence of significant harm, the circuit court weighed "the nature of the child's alleged misconduct against the nature of the discipline imposed by the parent." *See id.* at 699-700. Within this context, and after examining the "totality of the evidence," the court found that Marshall's conduct fell under the privilege as it related to Code § 18.2-57.2.

Nonetheless, the circuit court found the evidence sufficient to support a finding that Marshall engaged in "'cruel treatment' of his son" and convicted Marshall of violating Code § 40.1-103. The court found that Marshall "yelled at, cursed at, belittled, and issued corporal punishment . . . over the course of approximately fifteen to twenty minutes all because L.M. allegedly spit his vitamins in the trash." The circuit court cited Marshall's physical conduct, including "push[ing] L.M. up against a door, then us[ing] two hands on his collar to shake him while yelling inches from his face, then essentially tackl[ing] him with a modified chokehold" and administering four strikes with his open-faced palm. The court found the final slap to L.M.'s face to be "the exhibition of uncontrolled passion on the part of the parent" that served no other purpose. The circuit court also stated that "[d]uring this encounter, L.M. [wa]s quietly whimpering, sobbing, or desperately begging . . . his father not to hurt him or spank him. By the end of the most intense portions of the encounter, L.M. [wa]s apparently hyperventilating as a result of the interaction."

Marshall was sentenced to two years of imprisonment, all suspended, for the violation of Code § 40.1-103(A). A day after the sentencing hearing, Marshall filed a motion to reconsider, where he also raised for the first time the unconstitutionality of the statute as applied to his conduct. The circuit court denied the motion.

On appeal, Marshall challenges the court's failure to apply the parental privilege to his charge under Code § 40.1-103(A). He also argues that, even presuming that the parental privilege

does not apply, the evidence showed that his actions could not have risen to the level of child cruelty as defined by the statute. Marshall further contends that, even if the evidence was arguably sufficient to sustain a finding that his actions violated Code § 40.1-103(A), the court erred in failing to rule that Code § 40.1-103(A) is unconstitutionally vague as applied in this case. Marshall asserts that the statute as worded did not give him notice that conduct that was immune from prosecution as a parental privilege of discipline could nonetheless be considered "child cruelty" and subject to prosecution.

## ANALYSIS

### A. Application of the Parental Privilege

"The issues on appeal present mixed questions of law and fact. Thus, '[w]e give deference to the trial court's factual findings and view the facts in the light most favorable to the prevailing part[y,]' but we review the trial court's application of the law to those facts de novo." *Tuttle v. Webb*, 284 Va. 319, 324 (2012) (alterations in original) (quoting *Caplan* v. *Bogard*, 264 Va. 219, 225 (2002)); *see e.g.*, *Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006) ("For those issues that present mixed questions of law and fact, we give deference to the trial court's findings of fact and view the facts in the light most favorable to the prevailing party, but we review the trial court's application of the law to those facts *de novo*."). Furthermore, we are tasked with determining "the scope of the parental privilege to discipline, which involves both questions of law and fact." *Woodson*, 74 Va. App. at 694.

Marshall argues that if his conduct while disciplining L.M. falls within Virginia's parental privilege with respect to Code § 18.2-57.2, then the parental privilege must also protect him from conviction under Code § 40.1-103(A) based on the "same conduct." Marshall goes on to argue that the parental privilege is not limited to the administration of corporal punishment but covers all acts of parental discipline; therefore, the circuit court "construed the breadth of the

parental privilege too narrowly and the meaning of 'cruelly treated' too broadly." We agree that the parental privilege applies to matters of parental discipline and is not limited to corporal punishment. We also find that the circuit court erred when it applied the privilege with respect to Code § 18.2-57.2, but not to Code § 40.1-103(A).

"[A] parent has the right to administer such reasonable and timely punishment as may be necessary to correct faults in his growing children." *Carpenter v. Commonwealth*, 186 Va. 851, 860 (1947). Accordingly, the "'parental privilege' excuses what would otherwise be battery in the ordinary course." *Woodson*, 74 Va. App. at 689-90. This is so long as the punishment is not "used as a [cloak] for the exercise of malevolence or the exhibition of uncontrolled passion on the part of the parent." *Carpenter*, 186 Va. at 860. A parent only "becomes criminally liable" when that parent exceeds "the bounds of moderation and reason" in punishing their child. *Id.* at 861. "[T]he privilege cannot cloak punishment that causes, or threatens, serious harm." *Woodson*, 74 Va. App. at 695. "When there is evidence of significant harm, distinguished from transient pain or temporary minor marks, that alone shows that the parental privilege does not apply." *Id.* at 699. Yet "[a] lack of significant physical harm does not end the analysis." *Id.* "Absent significant harm, a factfinder may conclude that a combination of factors show the child was at risk of serious harm—which still makes the discipline unreasonable." *Id.* For example, the child's "age, size and conduct . . . , the nature of his misconduct, the nature of the instrument used for punishment," and the "emotional state of the parent" are all circumstances to be considered. *Carpenter*, 186 Va. at 860, 863; *Woodson*, 74 Va. App. at 696. "But the nature of the child's misconduct, and the trial court's view that the misbehavior did not warrant corporal punishment, cannot be the primary factor." *Woodson*, 74 Va. App. at 699-700.

In *Woodson*, this Court reversed Woodson's assault and battery conviction because her actions in disciplining her children with a belt "constituted reasonable corporal punishment,

falling within [the] parental privilege." *Id.* at 694. Woodson's "use of the soft end of a belt was not so unusual, cruel, or degrading without the presence of significant injury or other evidence about the number or location of the strikes." *Id.* at 701. The two twelve-year-old children sustained only some bruising, and "[t]here was no evidence that Woodson carried out this punishment in a state of anger or rage, or that it was done in a degrading way." *Id.* This Court found that the circuit court's "[d]isagreement with Woodson's decision to use corporal punishment, combined with evidence of only transient marks from the soft end of a belt, [fell] short of what a reasonable fact finder could conclude is excessive." *Id.* at 702.

Crucially, the parental privilege applies to all matters of parental discipline and not just to corporal punishment. The protection is thus not limited to behavior that would constitute assault and battery, but rather any disciplinary conduct between a parent and a child that would otherwise violate the criminal law—so long as that conduct fits under the parameters of the privilege.

Here, the circuit court separately evaluated and parsed the episode of discipline to find that the conduct applicable to Marshall's misdemeanor charge was within the privilege, while the conduct applicable to the felony charge did not merit the application of the privilege analysis. The court concluded that the parental privilege applied to the three strikes to L.M.'s buttocks and the last slap to his face for the purposes of Code § 18.2-57.2. The remaining physical and verbal conduct—the yelling, belittling, cursing, pushing L.M. against the door, shaking him, and "essentially tackling him with a modified chokehold"—fell outside the privilege's scope and thus, paired with the three spanks and one slap, were "sufficient to support a finding that [Marshall] engaged in 'cruel treatment' of his son, . . . over the course of the entire encounter."[3]

---

[3] Notably, the court reiterated the privilege standard in its discussion of Code § 40.1-103(A), but then failed to discuss its application to the charge at hand.

This was in error. As stated in *Woodson*, "[p]arenting is an inordinately difficult task," especially when a child is unruly and exhibits a pattern of oppositional defiance, like L.M., "and a criminal prosecution cannot rest on a debatable parenting decision without other evidence that the conduct was excessive." 74 Va. App. at 701-02. To accommodate this inordinate difficulty, the court was obligated to analyze the parental privilege independently for each criminal charge. Although the trial court correctly applied the parental privilege to the charge of assault and battery under Code § 18.2-57.2, it failed to apply the parental privilege to the cruel treatment to a child charge under Code § 40.1-103. We therefore remand for the court to perform this analysis.

B. Constitutional Challenge

Lastly, Marshall challenges the constitutionality of Code § 40.1-103(A); however, the argument was first raised in a motion to reconsider after trial. Challenges to a prosecution alleging that the statute charged is unconstitutional must be filed in writing at least seven days before trial. Code § 19.2-266.2. "Fail[ure] to meet these statutory requirements" for a pre-trial motion results in a "waive[r of the constitutional challenge] on appeal." *Schmitt v. Commonwealth*, 262 Va. 127, 146 (2001). The circuit court, however, may, "for good cause shown and in the interest of justice, permit the motion[] or objection[] to be raised at a later time." Code § 19.2-266.2(B). Making constitutional challenges to the code section now before this Court is not without precedent. Nearly two decades ago, a portion of the section was found to be unconstitutionally vague. *See Commonwealth v. Carter*, 21 Va. App. 150 (1995). In addition, a panel of this Court addressed the same issue in *Mollenhauer v. Commonwealth*, No. 0826-20-2 (Va. Ct. App. July 6, 2021), no less than three years ago. Like the argument now before this Court, appellant contended that "cruelly treated" was unconstitutionally vague. *Id.* at 6. Also like the posture presented in this case, no pre-trial constitutional challenge was made. The opinion in *Mollenhauer* recognized established precedent that the statutory requirements for

the constitutional challenges protected legitimate state interests. *See Arrington v. Commonwealth*, 53 Va. App. 635, 640 (2009) (finding that the statute "serve[s] legitimate state interests in protecting against surprise, harassment, and undue delay"); *and Bass v. Commonwealth*, 70 Va. App. 522 (2019). The Court concluded that absent exception, Mollenhauer's failure to meet the statutory requirements for a pre-trial motion resulted in a waiver of his constitutional challenge on appeal. *Mollenhauer*, slip op. at 7.

Marshall acknowledges he did not file a pre-trial motion challenging the validity of the statute on its face. He does not, however, raise a showing of good cause. Instead, he argues his exception is based on the distinction between a facial challenge and an as-applied challenge to a statute's unconstitutional vagueness. In arguing an as-applied challenge, he asserts that "[o]f necessity, an as-applied challenge must be made after the state has put on its evidence," and thus he could not have brought the constitutional challenge before trial. Marshall believed that his behavior "fell within the bounds of moderation and reason protected by the [parental privilege] doctrine," and so "he had no reason to challenge the facial invalidity of the term 'cruelly treated.'" This is unfounded, as the plain language of Code § 19.2-266.2(B) makes no distinction between facial or as-applied challenges. Moreover, the indictment placed Marshall on clear notice that he was charged under the third clause of Code § 40.1-103 and it included the accusation that he "cruelly treated" his son. Given Marshall's access to the charging documents and the case history of the statute, we find his constitutional argument to be waived.

CONCLUSION

The circuit court erred in applying the parental privilege protection only to the Code § 18.2-57.2 violation and not to the Code § 40.1-103 violation. The proper application of the parental privilege can excuse any disciplinary conduct between parent and child that would

- 10 -

otherwise be criminal, not just battery.  Given this, we find the parental privilege analysis must be

applied to both charges, and remand for the court to consider the facts in light of this analysis.

*Reversed and remanded.*