COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Elder and Lemons
Argued at Norfolk, Virginia


RON ROBERTS, S/K/A RONALD ROY ROBERTS
                                             OPINION BY
v.        Record No. 1940-97-1      JUDGE DONALD W. LEMONS
                                             OCTOBER 6, 1998
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                  Robert B. Cromwell, Jr., Judge

        Catherine L. MacLean, Assistant Public
        Defender (Office of the Public Defender, on
        brief), for appellant.

        Kathleen B. Martin, Assistant Attorney
        General (Mark L. Earley, Attorney General, on
        brief), for appellee.


        Ron Roberts, s/k/a Ronald Roy Roberts, appeals his

conviction of driving after having been adjudicated an habitual

offender.  Roberts asserts that the trial court erred in finding

that he operated a motor vehicle on a "highway" as defined by

Code § 46.2-100.  We agree and reverse.

                          FACTUAL BACKGROUND

        On October 3, 1995, at approximately 10:45 p.m., Officer

Christopher E. Fox of the City of Virginia Beach Police

Department first encountered Roberts.  At the time of the first

encounter, Officer Fox testified that Roberts was a passenger in

a white van that had been stopped because the driver was

suspected of operating a motor vehicle under the influence of

alcohol.  Officer Fox testified that Roberts was uncooperative

and appeared unsteady on his feet.  The officer warned Roberts

and another passenger that they would be arrested for being drunk in public unless they went inside, and the two walked into a house across the street.

Later that evening, at approximately 11:30 p.m., Officer Fox observed Roberts driving a white van through the parking lot of a 7-Eleven convenience store. When the officer stopped the van, Roberts was alone in the vehicle. After the officer arrested him for being drunk in public, he discovered that Roberts had been adjudicated an habitual offender and that his license to operate a motor vehicle had been suspended.

Officer Fox testified that he did not see any traffic signs within the parking lot. The officer also stated that he did not notice any signs that indicated that access to the area was restricted in any way. The officer testified that the store parking lot was accessible to the public by five entrances.

Delvine Ray Claridge, store manager of the 7-Eleven, testified on behalf of Roberts and stated that Southland Corporation of Dallas, Texas owned the store and contracted for the maintenance of the premises, including the parking lot. She testified that neither the Commonwealth of Virginia nor the City of Virginia Beach contributed any funds to the maintenance of the property. Ms. Claridge stated that she was authorized to ask persons to leave the 7-Eleven property, including the parking lot. Ms. Claridge testified further that in the past she had called the police to remove persons from the store premises and

that such persons were sometimes charged with trespassing. She stated that no traffic signs existed on the property, other than a handicapped sign for one parking space.

DEFINITION OF "HIGHWAY" UNDER VIRGINIA CODE

In order to sustain a conviction for driving after having been adjudicated an habitual offender, the Commonwealth must prove that a person has driven a motor vehicle "on the highways of the Commonwealth," after he or she has been adjudicated an habitual offender and during the period his or her license is revoked or suspended. Code § 46.2-357. "[T]he test for determining whether a way is a 'highway' depends upon the degree to which the way is open to public use for vehicular traffic." Furman v. Call, 234 Va. 437, 439, 362 S.E.2d 709, 710 (1987) (citing Kay Management v. Creason, 220 Va. 820, 831-32, 263 S.E.2d 394, 401 (1980)).

In Prillaman v. Commonwealth, 199 Va. 401, 100 S.E.2d 4 (1957), the defendant was convicted of driving a motor vehicle at a time when his license to operate a motor vehicle had been suspended. At the time of his arrest, the defendant was driving his vehicle in the parking lot of a service station. The Court found that unlike public roadways,

> [t]he [gas station] premises . . . were open to the public upon [the owner's] invitation. The invitation was for private business purposes and for his benefit. He had the absolute right at any time to terminate or limit this invitation. He could close his doors and bar the public or any person from vehicular travel on all or any part of his premises at will. He had

- 3 -

complete control of their use.

Id. at 407-08, 100 S.E.2d at 8-9.  The Court held that because public access was so restricted, the parking lot of the gas station did not constitute a highway for purposes of the Motor Vehicle Code.  Id. at 408, 100 S.E.2d at 9.

In Kay Management, 220 Va. at 831-32, 263 S.E.2d at 401-02, the Court considered whether motor vehicle laws applied to roads in an apartment complex for purposes of recovery in a personal injury action.  In distinguishing the facts from those in Prillaman, the Court held that "the evidence of accessibility to the public for free and unrestricted use gave rise to a prima facie presumption that the streets of [the apartment complex] were highways within the definition of [the Virginia Code]."  Id. at 832, 263 S.E.2d at 401.  The Court found that the defendant was unable to rebut this presumption by merely showing that the tenants had primary access to the property.  See id. at 832, 263 S.E.2d at 402.  The Court found that the streets were neither used exclusively by the owners nor limited to those to whom the owner had granted permission.  See id. at 832, 263 S.E.2d at 401.

In Furman, 234 Va. 437, 362 S.E.2d 709, the plaintiff suffered injuries in the parking lot of an office complex when her vehicle collided with the defendant's vehicle as both cars left the lot.  Because the statutory rules of the road apply only to roadways that constitute "highways," the nature of the parking area was critical to the outcome of the case.  In Furman, the

roads surrounding the parking area "have always been open to the public 24 hours a day, seven days a week. Access to the public has never been denied by guards, gates, or any other device." Id. at 440-41, 362 S.E.2d at 711. The Furman Court found that even though the lot was posted with signs stating "Private Property" and "No Soliciting," the lot was a highway within the statutory definition because public access was "full and unrestricted." Id. at 441, 362 S.E.2d at 711.

In Flinchum v. Commonwealth, 24 Va. App. 734, 485 S.E.2d 630 (1997), we reversed a defendant's conviction for operating a motor vehicle after having been adjudicated an habitual offender. In Flinchum, the arresting officer observed the defendant "doing doughnuts" in the parking lot of a sporting goods store. The officer then watched the defendant drive his vehicle from the sporting goods parking lot into the adjacent parking lot of a car repair business. The officer never saw the defendant drive his vehicle onto Route 11, which ran in front of the two stores. See id. at 735, 485 S.E.2d at 630.

The sporting goods store was privately owned, and public access was limited to the issuance of an invitation to do business by the owner. Id. at 737, 485 S.E.2d at 631. No signs were posted in the parking lot of the sporting goods store, although a "No Trespassing" sign was located on the property of the repair shop. Id. at 735, 485 S.E.2d at 630. The Court considered the definition of a "highway" contained in Code

§ 46.2-100:

> The entire width between the boundary lines of every way or place <u>open to the use of the public for purposes of vehicular travel in the Commonwealth</u>, including the streets and alleys, and for law enforcement purposes, the entire width between the boundary lines of all private roads or private streets which have been designated "highways" by an ordinance adopted by the governing body of the county, city, or town in which such private roads or streets are located.

<u>Id.</u> at 735-36, 485 S.E.2d at 630-31 (emphasis added). Based upon the public's restricted access to the parking lot, we found that the defendant had not been operating his vehicle on a "highway," as defined by Code § 46.2-100.

In the matter before us, Officer Fox arrested Roberts after observing him driving a white van in the parking lot of a convenience store. Although the officer had seen Roberts earlier at a DUI traffic stop as the passenger in the same vehicle, he did not see Roberts operate the vehicle in any area other than within the 7-Eleven parking lot.

The 7-Eleven parking lot was privately owned property. The owner of the lot, Southland Corporation, issued an invitation to do business to the public. Access by the public to the property was restricted to this invitation. The owner and its employees retained the right to ask persons to leave the property and to have trespassers removed by the police. No traffic signs existed on the parking lot. Based upon the restricted public access to the premises, the parking lot of the 7-Eleven store was not a

"highway" as defined by Code § 46.2-100.

To sustain a conviction of driving after having been adjudged an habitual offender, a person must have operated a motor vehicle "on the highways of the Commonwealth," during a period of time in which he or she has been adjudicated an habitual offender and while his or her license is revoked or suspended.  Code § 46.2-357.  The trial court erred in finding that Roberts was operating a motor vehicle on a "highway" as defined by Code § 46.2-100.  The conviction is reversed.

<u>Reversed and dismissed.</u>