PRESENT: All the Justices

MAX CAPLAN

OPINION BY
v.  Record No. 011807         JUSTICE DONALD W. LEMONS
                              June 7, 2002
JEREMY BOGARD, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Jonathan M. Apgar, Judge

In this appeal of a personal injury action, we consider

whether the trial court erred when it instructed the jury that

the entrance to a restaurant parking lot was a "highway" within

the meaning of Code § 46.2-100.

I.  Facts and Proceedings Below

Max Caplan ("Caplan") filed a motion for judgment against

Jeremy Bogard ("Bogard") and Quality Produce Company ("Quality

Produce") for personal injuries sustained in an automobile

accident in Roanoke, Virginia.  Bogard, a delivery truck driver

for Quality Produce, was exiting the parking lot of the Roanoker

Restaurant (the "Roanoker") and was turning west onto Colonial

Avenue when he struck Caplan's vehicle.  West of the entrance to

the Roanoker, Colonial Avenue was marked as a two-lane road

divided by a double yellow line.  Immediately before the

entrance, the pavement of the single eastbound lane was marked

with two arrows, one on the left side of the lane pointing

straight ahead and one on the right side of the lane pointing

right, toward the entrance to the Roanoker.[*]  East of the entrance, Colonial Avenue was a four-lane road, divided into two lanes in either direction.

Caplan was driving east on Colonial Avenue on the morning of the accident, a route he drove every morning on his way to work.  Traffic was heavy and, before the accident occurred, cars were "bumper to bumper and moving slowly" on his right side.  Caplan explained that he would "hug the [double yellow] line" in order to pass cars that moved to the right side of the roadway as he approached the Roanoker.  Caplan testified that as he approached the entrance to the Roanoker on the morning of the accident, he "passed . . . six or seven cars that were bumper to bumper on [his] right."  Caplan further testified that as he passed the entrance to the Roanoker, he saw "something white, large in the corner of [his] eye, but [he] didn't know what it was.  And the next thing [he] heard a glass shattering and metal."

Bogard testified that on the morning of August 16, 1999, he had completed his daily produce delivery to the Roanoker and was preparing to exit the restaurant's premises to make his next delivery.  He stopped his truck at the entrance to the Roanoker, in the left turn lane, in order to wait for an opportunity to

---

[*] Caplan testified that the eastbound lane became "a little bit wider" at the point where the two arrows were located.

turn west onto Colonial Avenue. According to Bogard, the eastbound traffic on Colonial Avenue was backed up and stopped, forming a single line of vehicles. Bogard testified that he waited between thirty seconds to one minute before an eastbound vehicle stopped and the driver motioned him into the intersection. Bogard was aware that other vehicles were stopped behind the vehicle that stopped for him. He then looked to his right and, discerning that no one was approaching from that direction, he proceeded forward, whereupon he struck Caplan's vehicle. Bogard testified that he did not see Caplan traveling east on Colonial Avenue prior to the collision.

William B. Miller ("Miller"), a former police officer, witnessed the accident. Miller was driving east on Colonial Avenue toward the Roanoker and was traveling in the right portion of the single eastbound lane. He testified that a "vehicle passed [him] on [his] left" and then he saw that vehicle, which he later learned was driven by Caplan, collide with Bogard's truck. According to Miller, the accident occurred "straight out" from the entrance to the Roanoker.

Mike Olney ("Olney"), another witness to the accident, was also approaching the entrance to the Roanoker from the east when he witnessed the collision between Caplan and Bogard. Olney testified that prior to the collision he noticed a vehicle, which he later learned was driven by Caplan, "following [him]

3

fairly closely." Olney explained that he moved over to the right portion of the lane "in anticipation of [Caplan] passing [him] once [he] got past the Roanoker Restaurant." Olney stated that after he moved to the right, Caplan passed his vehicle and "as Mr. Caplan came around me – I don't believe there were any cars in front of him – he collided with a truck that was pulling out of the Roanoker Restaurant."

Sergeant William M. Babb ("Babb"), a patrol sergeant with the Roanoke City Police Department, was assigned to the accident scene, and at trial, he described the entrance to the Roanoker. He explained that the entrance included a double yellow line to separate the entrance lanes from the exit lanes, and also included a separate left turn lane. Babb further testified that, to the best of his knowledge, the entrance to the Roanoker was a "way that [was] open to the public 24 hours a day," the premises were not posted with "No Trespassing" signs, and there was not a chain in place to block access to the premises when the Roanoker was closed.

At the conclusion of the evidence, the parties proposed jury instructions to the trial court and disagreed whether the entrance to the Roanoker parking lot was a "highway" within the meaning of Code § 46.2-100. Caplan proposed the following instruction, which characterized the entrance as a "private road":

4

Instruction A:

 Immediately before entering a highway from a private road, the driver of a vehicle has a duty to stop and use ordinary care to yield the right-of-way to any approaching vehicle that is so near the intersection that the driver cannot safely enter it.

 If a driver fails to perform this duty, then he is negligent.

The trial court refused Instruction A and explained:

 After much debate, reference to the statute definition and much more debate, I'm finally satisfied that under the use existing on August the 16, 1999 that the driveway in and out of the parking lot of the Roanoker Restaurant, as shown in the overhead photograph which is an exhibit in this case, and the other testimony surrounding it is that it has unrestricted public access and that the unrestricted public access is for vehicular traffic.

 And I'm satisfied that it's more of a highway than a private road since there are not limitations to it.

 As far as the evidence is concerned, there are no limitations to going in and out with your motor vehicle, although I think the logical inference is the only reason to go in and out of there is to eat a meal at the Roanoker.

 In any event, it's more of a highway instead of a private road. I'm going to refuse the private road instructions.

Caplan objected to the trial court's refusal of his proposed instruction. The trial court granted the following instructions:

5

Instruction 13:

   You are instructed that the intersection of Colonial Avenue and the entrance to the Roanoker Restaurant is an intersection of highways.

Instruction 15:

   A driver of a vehicle has a duty not to pass any other vehicle proceeding in the same direction at any intersection of highways unless such vehicles are being operated on a highway having two or more designated lanes of roadway for each direction of travel or unless such intersection is designated and marked as a passing zone.

   If a driver fails to perform this duty, he is negligent.

The jury returned a verdict in favor of both defendants, Bogard and Quality Produce. Caplan filed a motion to set aside the verdict, which the trial court denied by letter opinion dated May 9, 2001. A final order was entered in favor of both defendants on May 24, 2001. Caplan appeals the judgment of the trial court.

## II.  Standard of Review

This appeal presents a mixed question of law and fact which we review de novo. We give deference to the trial court's factual findings and view the facts in the light most favorable to Bogard and Quality Produce, the prevailing parties below, in order to review the trial court's application of the law to the

6

facts.  <u>Carmody v. F.W. Woolworth Co.</u>, 234 Va. 198, 201, 361 S.E.2d 128, 130 (1987).

### III.  Analysis

On appeal, Caplan maintains that the entrance to the Roanoker is part of a privately maintained parking lot and is not a highway pursuant to Code § 46.2-100.  Accordingly, he argues that the trial court erred in instructing the jury that the accident occurred at an "intersection of highways" and in refusing Instruction A.

Bogard and Quality Produce maintain that the trial court correctly instructed the jury that the accident occurred at an "intersection of highways," and argue that Caplan failed to rebut the evidence of unrestricted access to the area, thereby raising a presumption that the entrance was a "highway," in accordance with our decision in <u>Kay Management Co. v. Creason</u>, 220 Va. 820, 263 S.E.2d 394 (1980).  Bogard and Quality Produce further argue that even if the trial court erred in instructing the jury that the area was an "intersection of highways" and in refusing Instruction A, any error was harmless because another instruction was given that imposed the same duties on Bogard as those imposed by Instruction A.

At the time of the accident, a "highway" was defined by Code § 46.2-100 as:

7

> the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys, and, for law-enforcement purposes, the entire width between the boundary lines of all private roads or private streets which have been specifically designated "highways" by an ordinance adopted by the governing body of the county, city, or town in which such private roads or streets are located.

We and the Court of Appeals have had numerous opportunities to interpret the definition of a "highway" as the term is used in Title 46.2 and predecessor provisions of the Code. In Prillaman v. Commonwealth, 199 Va. 401, 100 S.E.2d 4 (1957), the defendant, who was arrested while driving his vehicle in the private parking lot of a service station, was convicted for operating a motor vehicle after his operator's license had been suspended. Id. at 402, 100 S.E.2d at 4-5. We stated that the "true test" of whether a "way" is a highway is "whether the 'way or place of whatever nature' is open to the use of the public for purposes of vehicular travel." Id. at 407, 100 S.E.2d at 8 (quoting Crouse v. Pugh, 188 Va. 156, 165, 49 S.E.2d 421, 426 (1948)). We stated:

> [t]he premises . . . were open to the public upon [the owner's] invitation. The invitation was for private business purposes and for his benefit. He had the absolute right at any time to terminate or limit this invitation. He could close his doors and bar the public or any person from vehicular travel on all or any part

8

> of his premises at will.  He had complete
> control of their use.

199 Va. at 407-08, 100 S.E.2d at 8-9.  Accordingly, we held that because of the limited invitation to the public to enter the premises, the parking lot did not constitute a highway for the purposes of the Code.  Id. at 408, 100 S.E.2d at 9.

In Kay Management, 220 Va. 820, 263 S.E.2d 394, which involved an action for personal injuries sustained by a pedestrian, we considered whether motor vehicle laws applied to the roads within a private apartment complex.  Kay argued "that, as the streets or roadways in the apartment complex were maintained by Kay for the benefit of the tenants, they were not highways to which the statutory rules applied."  Id. at 830, 263 S.E.2d at 400.  We distinguished the facts in Prillaman and held that "evidence of accessibility to the public for free and unrestricted use gave rise to a prima facie presumption that the streets of [the apartment complex] were highways within the definition of [the Code]."  Id. at 832, 263 S.E.2d at 402.  Because the defendants did not rebut the presumption by showing that access to the public was restricted to those with either the "express or implied permission from the owners," we held that the roads within the complex were highways within the meaning of the Code.  Id.

The Court of Appeals, in Roberts v. Commonwealth, 28 Va. App. 401, 504 S.E.2d 890 (1998), considered whether a convenience store parking lot was a highway, where the defendant was convicted of driving in the parking lot after having been adjudicated an habitual offender. Id. at 402, 504 S.E.2d at 890. The Court of Appeals held that

> [t]he 7-Eleven parking lot was privately owned property. The owner of the lot . . . issued an invitation to do business to the public. Access by the public to the property was restricted to this invitation. The owner and its employees retained the right to ask persons to leave the property and to have trespassers removed by the police. No traffic signs existed on the parking lot. Based upon the restricted public access to the premises, the parking lot of the 7-Eleven store was not a "highway" as defined by Code § 46.2-100.

Id. at 406, 504 S.E.2d at 892. See also Flinchum v. Commonwealth, 24 Va. App. 734, 737-38, 485 S.E.2d 630, 631-32 (1997) (holding that the parking lots of a sporting goods store and a repair business were open to the public upon the invitation of the store owners and the store owners could "close [their] doors and bar the public . . . from vehicular travel on all or any part of [their] premises at will"; accordingly, the parking lots were not "highways" pursuant to the Code.)

Our prior decisions dictate that the party seeking to establish that a particular way is a highway has the initial

10

burden of presenting evidence of unrestricted access to the public. A sufficient showing of unrestricted access gives rise to the presumption that the way is a highway. Once this presumption is found to be applicable, the opposing party has the burden to rebut the presumption by showing that the area was open only to those with "express or implied permission from the owner[]." Kay Management, 220 Va. at 832, 263 S.E.2d at 402.

In the present case, Bogard and Quality Produce had the initial burden to establish that public access to the Roanoker was unrestricted. Bogard and Quality Produce presented evidence that there was not a chain, or any other barrier, to physically block the entrance to the Roanoker when the restaurant was closed.

On this record, we hold that Bogard and Quality Produce failed to establish the required element of unrestricted access, and consequently no presumption that the driveway was a highway arises. Merely presenting evidence that access to the public is not blocked by a physical barrier is not sufficient to demonstrate unrestricted access to the public and does not give rise to the presumption. To hold otherwise would have unintended and unreasonable consequences. If such a presumption could arise upon such limited proof, then it would be implicated in any case involving the intersection of a highway and most

11

commercial establishments and private residences.  Such a result is contrary to both common sense and reason.

We note a critical factual distinction between Kay Management and the present case.  In Kay Management, the "roads" at issue were actual named streets within the apartment complex that featured traffic signs, curbs, and sidewalks.  220 Va. at 830, 263 S.E.2d at 400.  In the present case, the entrance to the Roanoker from Colonial Avenue was merely an access way to the parking lot.

Bogard and Quality Produce argue that this case is controlled by our opinion in Furman v. Call, 234 Va. 437, 362 S.E.2d 709 (1987).  Furman is distinguished from this case by its unique facts and evidentiary posture.  In Furman, a collision occurred at an intersection of roadways within an office condominium complex consisting of numerous buildings. The network of roadways was complimented by two entrances on separate streets.  We observed that

> [t]he roads around and in the complex,
> however, have never been closed to the
> public; the complex is open for vehicular
> traffic 24 hours a day, seven days a week.
> No guard or barricade system prevents the
> public from driving at will through the
> complex.

Id. at 438, 362 S.E.2d at 710.  Although a sign indicating that the property was private was posted at each entrance, the signs read "Private Property, No Soliciting."  We held that "the

12

purpose of the signs is to prohibit soliciting, not the entry of motor vehicles operated by members of the public." Id. at 441, 362 S.E.2d at 711. Call offered sufficient evidence of free and unrestricted access and use of the roadways to give rise to the presumption that they were highways. Furman's evidence concerning the posted sign was insufficient to rebut the presumption. In this case, the evidence offered by Bogard of absence of a chain or barrier is insufficient to give rise to a presumption that the entrance to the Roanoker is a highway.

Accordingly, we hold that the private parking lot of the Roanoker, including its entrance, is not a "highway" pursuant to Code § 46.2-100. The trial court erred in holding that the accident occurred at an "intersection of highways," and by granting Instructions 13 and 15, and in refusing Instruction A.

Bogard and Quality Produce maintain that any error in the refusal of Instruction A was harmless because a granted instruction imposed the same duties on Bogard as the duties imposed by refused Instruction A. We agree that the two instructions imposed the same duties; however, the trial court's error was not harmless. As a result of the trial court holding that the intersection was an "intersection of highways," it granted Instruction 15, which imposed a duty upon Caplan that otherwise would not have existed, namely the duty not to pass a vehicle proceeding in the same direction at the intersection of

13

two highways.  The jury was instructed that if Caplan violated this duty, he was negligent.  We have held that "a misdirection or other mistake of the court appearing in the record is to be presumed to have affected the jury, and the judgment will be reversed, unless it plainly appears from the whole record that the error did not affect, and could not have affected, their verdict."  The American Tobacco Co. v. Polisco, 104 Va. 777, 781, 52 S.E. 563, 565 (1906).  On this record, we are unable to determine whether the jury found for the defendants based upon lack of primary negligence or based upon contributory negligence.  Therefore, we cannot conclude that the error in refusing Instruction A, and in granting Instructions 13 and 15, was harmless.

Accordingly, we will reverse the judgment of the trial court and remand for a new trial.

Reversed and remanded.