COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Athey
Argued at Richmond, Virginia

PUBLISHED

CHINA MICHAEL-LEE COLEMAN

v.      Record No. 1315-24-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE CLIFFORD L. ATHEY, JR.
FEBRUARY 10, 2026

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William E. Glover, Judge

Monica Tuck, Assistant Public Defender (Virginia Indigent Defense
Commission, on briefs), for appellant.

David A. Stock, Senior Assistant Attorney General (Jason S.
Miyares,[1] Attorney General, on brief), for appellee.

Following a misdemeanor jury trial held on June 7, 2024, the Circuit Court of

Spotsylvania County ("trial court") convicted China Michael-Lee Coleman ("Coleman") of one

count of driving under the influence of alcohol ("DUI") in violation of Code § 18.2-266. On

appeal, Coleman contends that the trial court erred by denying Coleman's motion to exclude the

certificate of blood-alcohol analysis as a result of the trial court holding that Coleman was

operating his vehicle on a highway, as defined by Code § 46.2-100.[2] For the following reasons,

we find no error and affirm Coleman's conviction.

_____

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] On brief, Coleman also challenges the sufficiency of the evidence underlying his
conviction. But at oral argument, his counsel stated that Coleman "do[es] not intend to challenge
the sufficiency of the evidence," thereby abandoning the issue. "Because appellant . . .
abandoned his argument regarding [sufficiency of the evidence], we will not address it." *Cuffee
v. Commonwealth*, 61 Va. App. 353, 367 n.4 (2013) (citing *Groves v. Commonwealth*, 50
Va. App. 57, 61 n.1 (2007) (stating that the Court would not address the appellant's argument

## I. Background[3]

Around 4:40 a.m. on December 16, 2023, Sheriff's Deputy Taylor Everetts ("Deputy Everetts") noticed that a vehicle that she had previously seen an hour before was still parked near an air pump at a Wawa gas station in Spotsylvania County. Deputy Everetts approached the vehicle to conduct a welfare check on the vehicle's sole occupant. As Deputy Everetts approached, she noticed that the vehicle's occupant, later identified as Coleman, was asleep in the driver's seat even though the vehicle's engine was still running. After awakening Coleman, she administered field-sobriety tests ("FSTs") and, based upon Coleman's performance on the tests, he was arrested for DUI in violation of Code § 18.2-266. She then took Coleman back to the sheriff's office, where he completed a breathalyzer test, which resulted in a certificate of blood-alcohol analysis showing Coleman's blood-alcohol content was 0.1.

The main entrance to the Wawa was controlled by a stoplight that permitted traffic to enter the premises from Courthouse Road. An air pump was located on the west side of the property, adjacent to a roadway that ran through the Wawa property before connecting to a neighboring strip mall. The Wawa also had another thruway connecting it to another business east of the premises. Both adjoining parcels had independent access points, but the parcels had no barriers limiting vehicular traffic from entering the Wawa property. The entire Wawa property was also paved, curbed, guttered, and included arrow markings directing vehicular traffic throughout the site. An aerial image of the Wawa property and adjacent parcels was

---

regarding sufficiency of the evidence where the appellant had expressly abandoned it by concession at oral argument)).

[3] On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

marked as evidence during the jury trial and is reproduced below for ease of reference. The location of Coleman's vehicle—which was next to the air pump—is circled at the bottom-center of the exhibit.



Pretrial, Coleman moved to exclude the certificate of analysis from admission into evidence. In support of his motion *in limine*, Coleman claimed that the Wawa property was not a highway as defined in Code § 46.2-100 and, therefore, the certificate of analysis was inadmissible in the case against him because, citing *Roseborough v. Commonwealth*, 281 Va. 233, 238 (2011), "the admissibility of certificates of analysis must be carefully limited to situations in which the implied consent law, with all of its attendant protections, is applicable."[4] As further support, Coleman asserted that there were several signs posted on the Wawa building,

---

[4] The relevant implied-consent law in this case is Code § 18.2-268.2.

which was located on the other side of the Wawa property opposite the location of the air pump. The posted signs referenced by Coleman read as follows:

> "15 MIN PARKING For WAWA CUSTOMERS ONLY—All Others Will be Towed at Owners Expense.";
>
> "WAWA PARKING ONLY—All Others Will be Towed at Owners Expense."; and
>
> "THIS PROPERTY IS TO BE USED FOR THE TRANSACTION OF BUSINESS FOR CUSTOMERS, VENDORS AND ASSOCIATES OF WAWA INC. AND MAY NOT BE USED FOR ANY OTHER PURPOSE. UNAUTHORIZED PARKING, LOITERING OR TRESPASSING IS PROHIBITED."

Although Coleman failed to delineate the location of each sign on the building, he claimed that the signs were "posted" in support of his position that the thruways on the Wawa property were not open for public use. Coleman also claimed that he "believe[d] . . . [Deputy Everetts] has previously testified she ha[d] arrested people for trespassing at this Wawa." Based upon the presence of the "posted" signs and Deputy Everetts's alleged previous testimony, Coleman contended that access onto the Wawa premises were conditioned "upon the intent of the private owner and the control of his property."

The Commonwealth responded by presenting aerial photographs of the entire area while further contending that since there were multiple entrances to the Wawa, and because the Wawa premises were also connected to other businesses within the surrounding vicinity, the Wawa property was a highway for the purposes of Code § 46.2-100. In support of its position, the Commonwealth explained that the main entrance to the Wawa on Courthouse Road was controlled by a traffic light that "forced" traffic into the Wawa parking area and compelled drivers to decide "where to go from there." The Commonwealth also asserted that the store was open to the public 24 hours a day, 7 days a week, and that there were no signs, gates, or barricades prohibiting entry to the location of Coleman's vehicle next to the air pump. The

Commonwealth further acknowledged the fact that signs indicating "no trespassing, no soliciting, [and] no loitering" were affixed to the walls of the building itself and provided store employees authority to ban people from the actual store. But the Commonwealth disputed that the signs granted Wawa employees authority to interfere with the "public's right to move lawfully through the area of the Wawa parking lot" as a whole.

Following oral argument, the trial court held that the Wawa premises met the definition of a highway. In reaching its conclusion, the trial court found that there were no obstacles or "No Trespassing" signs barring entry to the Wawa and no indication that it was closed to the public at certain times. The trial court also noted the existence of the stoplight on Courthouse Road that provided entry to the Wawa. Additionally, the trial court emphasized that the "property is traditionally open all the time not just for access to the Wawa, but for access to the adjacent parcels to which it is connected." Lastly, the court found that the signs posted on the building walls restricted activities only as to the area adjacent to the building and not to the location at large. Based thereon, the trial court denied Coleman's motion *in limine*.

The case proceeded to a jury trial on June 7, 2024. After jury selection and opening statements by both parties, the Commonwealth called Deputy Everetts to testify. She recounted the welfare check on Coleman. Deputy Everetts testified that she tapped on the driver's window to awaken Coleman and check on his well-being. The entire interaction was captured on her body-worn camera, which the Commonwealth admitted into evidence.

Deputy Everetts stated that Coleman awoke, appearing dazed with bloodshot eyes. She also recalled detecting a faint odor of alcohol about his person and that she observed a bottle of Ciroc, an alcoholic drink, sitting on the passenger's seat within Coleman's reach. Deputy Everetts asked Coleman to exit the vehicle. After doing so, Coleman said, "My old lady was with me earlier driving my car. I haven't even drove [sic] anywhere, I've been sittin' right here

the whole time." Coleman also added that "we had an argument, . . . she was driving, she left me right here, . . . [she] left with her friend, so I've been sittin' right here for quite some time."

Deputy Everetts testified that she then conducted the FSTs. She also testified that after first conducting the horizontal gaze nystagmus test, she noted nothing of concern. She then asked Coleman to perform the walk-and-turn test to assess his balance and coordination, however, she recounted almost immediately ceasing that test because Coleman mentioned that he was recovering from a torn ACL on one of his legs. Deputy Everetts then administered the one-legged stand test, using Coleman's uninjured leg. During that test, she testified that Coleman voluntarily put his foot down twice before the final count. After the FSTs, Deputy Everetts arrested Coleman for DUI within three hours of initially checking his well-being. Deputy Everetts did not testify—either in direct or cross-examination—as to whether she, or any other officer, had previously arrested any other driver for trespassing, or any other offense, at that Wawa.

Deputy Everetts noted that she took Coleman to the sheriff's office where he agreed to take a breath test. She testified that she was "a licensed breath test operator" and explained the general procedure for administering a breath test. She then recalled administering the breathalyzer test, which produced a certificate of analysis showing Coleman's blood-alcohol content. Deputy Everetts then confirmed that she signed the certificate of analysis, "certify[ing]" that the results were an accurate record of the conducted test, the test was conducted with proper equipment and procedures, and Coleman was advised of his rights to observe the test's results. Coleman objected to the admission of the certificate of analysis, but the trial court overruled his objection. The admitted certificate of analysis showed that Coleman had a blood-alcohol content of 0.1.

Coleman did not introduce any evidence and moved to strike, claiming that the evidence was insufficient, even *with* the certificate of analysis, to support a DUI conviction. The trial court denied the motion to strike and, following closing arguments, the jury found Coleman guilty of DUI. Thereafter, Coleman filed a motion to set aside the verdict. The trial court, citing both its earlier reasoning and specifically noting that Coleman's car was located "in part of the parking lot that could be used to access the adjacent parcels of the Wawa," denied the motion. Coleman appealed.

## II. ANALYSIS

### A. *Standard of Review*

Generally, "[t]he admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Fitzgerald v. Commonwealth*, 61 Va. App. 279, 284 (2012) (quoting *Bynum v. Commonwealth*, 57 Va. App. 487, 490 (2011)). But "[i]f the circuit court makes an error of law, it 'by definition abuses its discretion.'" *Warnick v. Commonwealth*, 72 Va. App. 251, 263 (2020) (quoting *Coffman v. Commonwealth*, 67 Va. App. 163, 166-67 (2017)). In analyzing questions of law to determine whether there is such an error, we review those questions de novo. *Kim v. Commonwealth*, 293 Va. 304, 311 (2017). And finally, when these issues involve mixed questions of fact and law, "[w]e give deference to the trial court's factual findings" but still review the court's application of law to those facts de novo. *Id.* (alteration in original) (quoting *Caplan v. Bogard*, 264 Va. 219, 225 (2002)); *see Rodriguez v. Leesburg Bus. Park, LLC*, 287 Va. 187, 193 (2014).

### B. *Coleman's vehicle was located on a Virginia "highway," as defined in Code § 46.2-100.*

Coleman claims that the trial court erred by holding that he was operating a motor vehicle on a highway. We disagree.

"'The right to operate a motor vehicle on the highways' of Virginia is not an 'unrestrained right, but a privilege which is subject to reasonable regulation under the police power of the State in the interest of public safety and welfare.'" *Patterson v. Commonwealth*, 62 Va. App. 488, 494 (2013) (quoting *Walton v. Roanoke*, 204 Va. 678, 683 (1963)). As relevant here, under Virginia law, a person "who operates a motor vehicle on a highway" impliedly provides consent to give breath or blood samples if the sample is taken within three hours of being arrested for operating a motor vehicle while intoxicated.[5] Code § 18.2-268.2(A). Such samples lead to certificates of analysis that evince the operator's blood-alcohol content.

Certificates of analysis, "when attested by the individual conducting the breath test . . . , shall be admissible in any court" to prove the facts that they contain (i.e., to prove the defendant's blood-alcohol content). Code § 18.2-268.9(B). But if implied consent is not established, then the "provision[] permitting the certificate of analysis to be admitted into evidence [is] not triggered." *Roseborough*, 281 Va. at 239. One way to vitiate implied consent is to show that a driver was not operating a motor vehicle on a "highway," and that is the issue in this case. *See Kim*, 293 Va. at 319-20.

The statutory definition of a "highway" includes "the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel." Code § 46.2-100. "[T]he determination of whether a way is a statutory highway does not turn on who owns or maintains the way." *Kim*, 293 Va. at 315. "Rather, the determination turns on 'whether the way or place of whatever nature is open to the use of the public for purposes of vehicular travel.'" *Id.* (quoting *Caplan*, 264 Va. at 226). "[E]stablishing that a way is 'open to the use of the public'

---

[5] Specifically, the person must be arrested pursuant to Code § 18.2-266, Code § 18.2-266.1, Code § 18.2-272(B), or "a similar ordinance." Code § 18.2-268.2(A).

requires more than simply showing that the public can or has used the way; it requires a showing that the public has *unrestricted access* to the way." *Id.* (citation omitted).

We use a burden-shifting framework to assess this:[6] "[T]he party seeking to establish that a particular way is a highway has the initial burden of presenting evidence of unrestricted access to the public." *Caplan*, 264 Va. at 227. If that showing is sufficient, there is a presumption that the way is a highway. *Id.* But once this presumption is established, "the opposing party has the burden to rebut the presumption by showing that the area was open only to those with 'express or implied permission from the owner[].'" *Id.* (alteration in original) (quoting *Kay Management Co. v. Creason*, 220 Va. 820, 832 (1980)).

1. <u>The Commonwealth adduced sufficient evidence to establish a presumption that Coleman's vehicle was located on a highway.</u>

When establishing whether a way is a statutory highway, the Commonwealth "has the initial burden of presenting evidence of unrestricted access to the public." *Id.* There is no single way to establish unrestricted access. *See Kim*, 293 Va. at 316 ("[W]e have never explicitly stated what further evidence of unrestricted access is necessary to give rise to the presumption . . . ."). Rather, there are several manifestations of unrestricted access that, in their totality, may establish the presumption.

---

[6] Certain decisions do not apply the burden-shifting framework in parking-lot cases. *See Seaborn v. Commonwealth*, 54 Va. App. 408, 412 (2009) ("The presumption created in *Kay Management* has no application in parking lot cases."); *see also Edwards v. City of Virginia Beach*, No. 2751-00-1, slip op. at 8 (Va. Ct. App. Sept. 25, 2001) ("The presumption created in *Kay Management* has no application in parking lot cases."). But the Supreme Court, in its most recent opinion on this subject, concluded that the burden-shifting framework applied without mention of potential exceptions for parking lots. *Kim*, 293 Va. at 312-15. Nevertheless, both parties, below and on brief, fail to raise this argument, so it is waived. *See, e.g.*, Rule 5A:20(c) (requiring that an appellant's brief "must list . . . the specific errors in the rulings below" and that "[o]nly assignments of error listed in the brief will be noticed by this Court"); *Winston v. Commonwealth*, 51 Va. App. 74, 82 n.4 (2007) (holding that when an "appellant did not include [an] argument in his [assignments of error], [this Court] will not address it on appeal").

One consideration is whether the way bears the indicia of traditional roadways. For example, in *Kay Management*, the Supreme Court considered whether private roads within an apartment complex were highways. 220 Va. at 829-30. The Court noted that the roads "were paved, curbed, and bordered by sidewalks," calling the roadways "well-defined." *Id.* at 830. These were considerations upon which the Court relied in concluding that the roadways "gave rise to a prima facie presumption" that they were highways. *Id.* at 832. By contrast, in *Caplan*, the Supreme Court reviewed whether a restaurant's parking lot and entryway were highways. 264 Va. at 225. The Court noted that the entryway was "merely an access way to the parking lot," specifically contrasting the entryway with the "actual named streets" from *Kay Management* "that featured traffic signs, curbs, and sidewalks." *Id.* at 228. The Court called this "a critical factual distinction" and held that the presumption was not established, concluding that the restaurant's entryway and parking lot were not highways. *Id.* at 228-29. This Court has also relied upon whether a way bears the traditional indicia of roadways in this context. *See Roberts v. Commonwealth*, 28 Va. App. 401, 406 (1998) (holding that a 7-Eleven parking lot was not a highway, in part, because "[n]o traffic signs existed on the parking lot").

In addition, places that are open to the public for long periods of time without evidence of the owner's right of exclusion are more likely to establish the presumption. For example, in *Furman v. Call*, 234 Va. 437, 438 (1987), the Supreme Court assessed whether the parking area of a condominium office complex containing commercial businesses was a highway. The Court noted that the complex's parking lot was "maintained by [a] Condominium Association" that could enforce parking violations. *Id.* at 438-39. But the Court also emphasized that "the roads around and in the condominium complex have always been open to the public 24 hours a day, seven days a week" and "[a]ccess by the public [was] never . . . denied by guards, gates, or any other device." *Id.* at 440-41. And the Court noted that "access to [the parking area] [wa]s

- 10 -

limited to two entrances from side streets" that were always accessible. *Id.* at 438. The Court subsequently concluded that the parking area was a highway. *Id.* at 441. By contrast, in *Roberts*, this Court reviewed whether a 7-Eleven parking lot was a highway. 28 Va. App. at 402-03. The Court noted that even though the parking lot was open to the public and accessible from five entrances, there was testimony that "[t]he owner and its employees retained the right to ask persons to leave the property and to have trespassers removed by the police." *Id.* at 406. The Court also emphasized that there was evidence that employees previously called the police to remove people from the premises. *Id.* at 403. The Court, relying in part on this evidence, held that the public did not have unrestricted access to the parking lot.[7] *Id.* at 406.

But certain evidence, standing alone, is insufficient. "Merely presenting evidence that access to the public is not blocked by a physical barrier is not sufficient to demonstrate unrestricted access to the public and does not give rise to the presumption." *Caplan*, 264 Va. at 227. Even so, our Supreme Court "ha[s] implied that the lack of a physical barrier *in conjunction with* evidence that the roads at issue are named, feature traffic signs, curbs, and sidewalks, would amount to a sufficient showing of unrestricted access to give rise to the presumption that the road is a highway." *Kim*, 293 Va. at 316 (emphasis added).

Here, we conclude that the Commonwealth adduced sufficient evidence to satisfy its burden to establish the presumption that where Coleman was found was a highway. Like the roads in *Kay Management*, the premises bore some indicia of a traditional roadway. Specifically, the premises were paved, curbed, and had several arrow markings painted on the

---

[7] This is not to say that a property *must* enforce their exclusion rights. It is false to "equate[] lack of enforcement [by the property owner] with unrestricted access." *Kim*, 293 Va. at 318. Rather, *Roberts* demonstrates that there must be *evidence* of the *right to exclude*, not exclusion itself. *See Roberts*, 28 Va. App. at 406.

- 11 -

thruways directing traffic. Even the location of Coleman's vehicle, which was near the air pump, bore such indicia because it was paved, curbed, and guttered.

In addition, like the parking area in *Furman*, the Wawa premises were accessible to the public 24 hours a day, 7 days a week, evincing that the area was open to unrestricted vehicular traffic. Indeed, a stoplight governed entry onto the Wawa premises, demonstrating that vehicles could follow the flow of traffic and, accordingly, access the premises. *See* Code § 46.2-833(A) (defining the meaning of traffic-light signals, including that "[g]reen indicates that traffic shall move in the direction of the signal and remain in motion as long as the green signal is given" unless the traffic must yield to lawfully present vehicles or pedestrians in the intersection). And like *Furman*, where a parking area and its roadways were accessible from several side streets, the Wawa premises were also connected to neighboring parcels that were independently accessible from other unrestricted roadways, further evincing that the Wawa property *itself* was freely accessible. *Cf. Furman*, 234 Va. at 438, 440-41. In fact, the trial court specifically found that Coleman's vehicle was found "in part of the parking lot that could be used to access the adjacent parcels of the Wawa," and, giving deference to this factual finding, this finding supports that Coleman was in a "place open to the use of the public for purposes of vehicular travel." Code § 46.2-100. Finally, there is no countervailing evidence like the enforcement-right evidence presented in *Roberts*, nor was there any barrier to enter the Wawa premises anywhere throughout the property.

Coleman contends that the Wawa property is "a large, paved area designed for customers of the business to utilize at the will of the owners," further claiming that "the caselaw demonstrates that using private property to run a commercial business establishment does not open the premises to such unrestricted public access." But Coleman's assertion is unavailing because the Supreme Court previously dismissed this argument in *Furman*. The office complex

- 12 -

in *Furman* hosted commercial entities, and the surrounding parking area was "maintained by the Condominium Association" that enforced parking violations within the parking area. *Furman*, 234 Va. at 438-39. Yet the Court in *Furman* still held that the parking area was a highway, which stands in direct contrast to Coleman's argument. *Id.* at 441. Accordingly, opening a commercial business to host the public for transactions does not automatically immunize the corresponding property from being deemed a highway.[8]

Thus, based upon the Commonwealth presenting sufficient evidence that the public had unrestricted access to the location of Coleman's vehicle, we find that the Commonwealth established the presumption that where Coleman was found is a highway. *See Kim*, 293 Va. at 316.

2. Coleman did not sufficiently rebut the presumption that where he was found was a highway.

The presumption having been established, the burden shifted to Coleman "to rebut the presumption by showing that the area was open *only* to those with 'express or implied permission from the owner[].'" *Caplan*, 264 Va. at 227 (alteration in original) (emphasis added) (quoting *Kay Management*, 220 Va. at 832). His attempt to rebut the presumption is unavailing.

Like the first step of our review, there is no specific way to prove whether an area was open solely to those with express or implied permission. *See Robinson v. Commonwealth*, 273 Va. 26, 34-35 (2007) (recognizing that implied consent to access a location "can be negated by obvious indicia of restricted access, such as posted 'no trespassing' signs, gates, *or other means* that deny

_____

[8] Indeed, Coleman's argument treads near a proposition that the Supreme Court has long dismissed: that *all* private property can *never* be deemed a highway. *See Kay Management*, 220 Va. at 831-32 (holding that "ways on private property that are open to public use for vehicular travel" could also be highways); *see also Morris v. Dame's Ex'r*, 161 Va. 545, 555 (1933) (holding that a freight-yard road was a public highway because it was privately owned but was "open to the use of the public for the purpose of vehicular travel" (quoting 1926 Va. Acts ch. 474 (establishing the precursor definition of "highway" containing the same operative language as the modern definition))).

access to uninvited persons" (emphasis added)); *accord Kim*, 293 Va. at 319 (citing *Robinson*, 273 Va. at 34-35). The purpose of this stage of review is to discern whether the defendant adduced evidence that "axiomatically negates any consent to access the [way] that may be implied." *Kim*, 293 Va. at 319. Defendants must introduce specific evidence to rebut the presumption that a way is a highway. *See Seaborn v. Commonwealth*, 54 Va. App. 408, 413 n.1 (2009) (emphasizing that a party presenting evidence of "strict no trespassing rules" was unhelpful in determining whether an access road was a highway because "no evidence was presented . . . that it had adopted such a no trespassing policy with respect to the use of its access road"); *cf. Wilson v. Commonwealth*, 225 Va. 33, 41 (1983) ("[O]ur general rule is to give rebuttable presumptions permissive or burden-of-production-shifting effect only.").

A common way to rebut the presumption that a particular location is a highway is with evidence of signs that demonstrate an intent to prohibit the public from driving through that location. *Kim*, 293 Va. at 319-20 (holding that sufficiently placed signs rebutted the presumption that a way was a highway); *Flinchum v. Commonwealth*, 24 Va. App. 734, 737 (1997) (same). Specifically, the presence of "No Trespassing" signs can rebut the presumption when they are "posted in a location 'where [they] may be reasonably seen.'" *Kim*, 293 Va. at 317 (quoting Code § 18.2-119 (detailing when "No Trespass" signs are effective in trespass suits)).

For example, in *Flinchum*, this Court reviewed whether two adjacent parking lots were highways. 24 Va. App. at 735. In holding that the parking lots were not highways, the Court reasoned that a "No Trespassing" sign in front of one parking lot "clearly served to 'prohibit . . . the entry of motor vehicles operated by members of the public'" into both parking lots. *Id.* at 737 (alteration in original) (quoting *Furman*, 234 Va. at 441). The Supreme Court clarified these rules in *Kim*, where the Court assessed, similar to *Kay Management*, whether the roads within an apartment complex were highways. *Kim*, 293 Va. at 316. Rather than a single sign, the Court noted

that there were "'No Trespassing' signs conspicuously posted at every entrance" to the complex. *Id.* at 318. After holding that the Commonwealth established the presumption that the roads were highways, the Court reasoned that such signs "could only be interpreted as explicitly prohibiting the public from accessing the entire apartment complex" due to their placement and visibility. *Id.* Accordingly, the Court held that the defendant rebutted the Commonwealth's presumption. *Id.* at 319.

However, any signage must specifically prohibit unauthorized access—merely prohibiting soliciting is insufficient to rebut the presumption. *See Furman*, 234 Va. at 441 (holding a "No Soliciting" sign served only "to prohibit soliciting, not the entry of motor vehicles operated by members of the public"). But this does not mean signs must be written with exactitude to prohibit specific activities. *See Kim*, 293 Va. at 317 ("[N]othing in [Code § 18.2-119] indicates that a 'No Trespassing' sign needs to be directed at a specific form of traffic in order to be effective."). Rather, to be effective, the signs must "clearly serve[] to 'prohibit . . . the entry of motor vehicles operated by members of the public'" onto the way, *Flinchum*, 24 Va. App. at 737 (second alteration in original) (quoting *Furman*, 234 Va. at 441), and "axiomatically negate[] any consent to access the [way] that may be implied," *Kim*, 293 Va. at 319.

Finally, beyond signage, "a general restriction on public access," as opposed to prohibiting access to a specific part of the premises, "is sufficient to rebut the presumption." *Kim*, 293 Va. at 319; *see Caplan*, 264 Va. at 227 (holding that a party may rebut the presumption "by showing that the *area* was open only to those with 'express or implied permission from the owner[]'" (alteration in original) (emphasis added) (quoting *Kay Management*, 220 Va. at 832)). Such general restrictions are present through "No Trespassing" signs at every entrance to a parcel, *see Kim*, 293 Va. at 319, or gates limiting access to properties therein solely to authorized persons. *Cf. Roseborough*, 281 Va. at 235-36, 237 n.1 (noting that "[t]here was no evidence that any . . .

- 15 -

definitions" of highway "apply to this case" where "a gated community [was] served by a system of internal private roads that were not public streets or highways"). And importantly, "once the area has been shown to be restricted, such restrictions necessarily include the roads therein." *Kim*, 293 Va. at 319.

Here, Coleman introduced evidence of signs posted on the Wawa convenience store that prohibited unauthorized parking and trespass. Unlike the signs in *Kim*, which were "conspicuously posted at every entrance" to the apartment complex, the signs in this case were merely affixed to the Wawa building itself and not near any entrances to the premises. *Kim*, 293 Va. at 318. To view the signs from the air pump, a driver would need to look across a lane of traffic, through several gas pumps, and across the parking area to discern the signs' text. So we agree with the trial court that those signs restricted access to the immediate vicinity of the building but did not "axiomatically negate[] any consent to access" the premises as a whole. *Kim*, 293 Va. at 319. Accordingly, the signs do not declare that "the area was open *only* to those with 'express or implied permission from the owner[].'" *Caplan*, 264 Va. at 227 (alteration in original) (emphasis added) (quoting *Kay Management*, 220 Va. at 832).

Coleman responds by asserting that the "No Trespassing" sign in *Flinchum* controls in this case. Coleman specifically claims that "the presence of a 'no trespassing' sign on the property of *one* of the two businesses [in *Flinchum*] was sufficient, without more, to establish that the property owners could restrict public access to the parking lots at will." But the Court in *Flinchum* never discussed the precise location of the sign beyond that it was posted on one of the properties. *See generally Flinchum*, 24 Va. App. at 735-36. The Court also did not clarify if the driver in *Flinchum* needed to pass the "No Trespassing" sign to get into the adjacent parking lot. *See generally id.* The Court merely stated that the sign's location—wherever it was—"clearly served to 'prohibit . . . the entry of motor vehicles operated by members of the public'" into both parking lots. *Id.* at 737

(alteration in original) (quoting *Furman*, 234 Va. at 441). And for the reasons stated previously, we cannot conclude that the signs affixed to the Wawa building attain the same result because they do not "axiomatically negate[] any consent to access" the Wawa premises. *Kim*, 293 Va. at 319. Accordingly, Coleman's reliance on *Flinchum* is unavailing.

Moreover, Coleman failed to present any evidence that public access to the area was generally restricted. Coleman did claim, while supporting his motion *in limine*, that he "believe[d] . . . [Deputy Everetts] has previously testified she has arrested people for trespassing at this Wawa." But Coleman failed to present any evidence in support of this claim—either while supporting his motion *in limine* or presenting evidence at trial—nor did Deputy Everetts testify that she, or other officers, removed unauthorized persons or vehicles from Wawa's premises in the past. Coleman also did not elicit information from Deputy Everetts on cross-examination to try and establish that she had previously arrested individuals at the Wawa's premises for trespass. Further, Coleman did not present any evidence of any Wawa employee or manager having the authority to remove an unauthorized entrant from the area outside the immediate vicinity of the Wawa building. *See Seaborn*, 54 Va. App. at 413 n.1 (emphasizing that a party presenting evidence of "strict no trespassing rules" was unhelpful in determining whether an access road was a highway because "no evidence was presented . . . that it had adopted such a no trespassing policy with respect to the use of its access road"). This stands in stark contrast to the evidence presented in *Roberts*, which affirmatively showed that "[t]he owner and its employees retained the right to ask persons to leave the property and to have trespassers removed by the police" and that employees had called the police to remove people from the premises. *Roberts*, 28 Va. App. at 406.

In short, Coleman needed to present specific evidence that "axiomatically negate[d] any consent to access the [way] that may be implied." *Kim*, 293 Va. at 319. He failed to do so. Thus,

Coleman failed to adduce sufficient evidence to rebut the presumption that where he was found was a highway. Accordingly, we conclude that this location is a highway within the meaning of Code § 46.2-100.

C. *The trial court properly admitted Coleman's certificate of analysis.*

Coleman also claims the trial court erred by admitting the certificate of analysis at trial. We disagree.

The General Assembly has declared by statute that, for DUIs occurring on highways, certificates of analysis, "when attested by the individual conducting the breath test . . . , shall be admissible in any court" to prove the facts that they contain (i.e., to prove the defendant's blood-alcohol content).[9] Code § 18.2-268.9(B); *see Roseborough*, 281 Va. at 238. Another limitation is that officers must arrest the suspect for DUI "within three hours of the alleged offense." Code § 18.2-268.2(A).

Here, the trial court did not abuse its discretion by admitting Coleman's certificate of analysis. The implied consent law applied because Coleman was operating his vehicle on a highway and Deputy Everetts arrested Coleman for DUI within three hours of operating the motor vehicle under the influence of alcohol. And importantly, Deputy Everetts, who administered the breath test, attested to the certificate of analysis by signing the certificate, thereby meeting the requirements contained in Code § 18.2-268.9(B). Thus, the certificate of analysis "shall be

---

[9] Code § 18.2-268.9(B) also mandates that, for certificates of analysis to be admissible, "the requirements of [Code § 19.2-187.1(A)] have been satisfied and the accused has not objected to the admission of the certificate pursuant to [Code § 19.2-187.1(B)]." Coleman does not assign error on whether these requirements were satisfied. We are "limited to reviewing the assignments of error presented by the litigant." *Banks v. Commonwealth*, 67 Va. App. 273, 289 (2017) (citations omitted). "Accordingly, . . . we only can review and consider the assignment of error [Coleman] presented to us," so we will not review whether these requirements were satisfied. *Riddick v. Commonwealth*, 72 Va. App. 132, 146 (2020).

admissible in any court," which is a clear command that the trial court heeded. Accordingly, the trial court did not abuse its discretion in admitting Coleman's certificate of analysis.

## III. CONCLUSION

Coleman was operating his vehicle on a highway within the meaning of Code § 46.2-100. Accordingly, the implied-consent statute applied in this matter. Thence, pursuant to Code § 18.2-268.9(B), the certificate of analysis was admissible. For these reasons, we affirm the trial court.

*Affirmed.*